119 So.2d 649 (1960)
Dolly ROGERS et vir, Plaintiffs-Appellants,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY et al., Defendants-Appellees.
No. 9196.
Court of Appeal of Louisiana, Second Circuit.
March 22, 1960.
Rehearing Denied April 28, 1960.
Certiorari Denied May 31, 1960.
*650 Roy M. Fish, Springhill, for plaintiffs-appellants.
Bodenheimer, Looney & Richie, Shreveport, for defendants-appellees.
HARDY, Judge.
This is an action in tort for the recovery of damages resulting from a surgical operation allegedly performed upon plaintiff wife without her consent or that of her husband. From a judgment rejecting their demands the plaintiffs have appealed.
Before the court the parties plaintiff are Dolly Rogers and her husband, Claude Rogers, who seek recovery for damages in the nature of personal injuries and medical expenses, respectively. The parties defendant are Dr. L. Keith Mason, his partner, Dr. Fleater Palmer, Jr., and their insurer, Lumbermens Mutual Casualty Company.
Plaintiffs' action is predicated upon the contention that she intended to submit to a simple appendectomy to be performed by Dr. Mason, and that without her knowledge or consent or that of her husband, Dr. Mason, assisted by Dr. Palmer, performed operations described as being a total hysterectomy; a bilateral salpingo-oophorectomy, and an appendectomy. In addition to categorical denials of the allegations of plaintiffs' petition, defendants specifically averred that the operation was performed with the consent of Mrs. Rogers; that it was necessary, by reason of the discovery of unanticipated conditions, to the well-being, health and best interest of Mrs. Rogers, and that the operation was successful.
It is appropriate to observe at the very outset of the discussion of this case that no issue is tendered which would involve any breach of medical ethics or any nature or degree of negligence or malpractice on the part of the defendant surgeons.
The only issue presented involves the question of law as to whether a surgeon is liable in damages for the performance of an unauthorized operation, and if the answer be in the affirmative, whether the facts of this case justify the conclusion that no consent, express or implied, was given by the patient or one authorized in her behalf.
The issue of law appears to be settled beyond any possibility of doubt. The universally recognized and accepted general rule is that the consent of a patient is a prerequisite to a surgical operation, and the surgeon who performs an operation without his patient's consent, express or implied, is liable in damages. This rule is subject to exceptions in the event of an emergency requiring immediate action for the preservation of the life or health of the patient under circumstances in which it is impossible or impracticable to obtain the patient's consent or the consent of anyone authorized to assume such responsibility. The general rule prohibiting the performance of an operation without the consent of the patient extends to the performance of operations different in nature from that for which a consent was given, and to operations involving risks and results not contemplated.
The above stated principles are set forth in detail, supported by a wealth of authorities, in 70 C.J.S. verbo Physicians and Surgeons § 48g, p. 967, et seq.; 41 Am. Jur., verbo "Physicians and Surgeons", Section 108, p. 220 et seq. The subject is discussed in some detail in Chapter III of the excellent work of Louis J. Regan, M.D., LLB, entitled "Doctor and Patient and the Law," page 71 et seq.
As noted by learned counsel for defendants, the only jurisprudence in this State *651 which touches upon the questions before us appears to be the case of Wells v. McGehee, La.App., 39 So.2d 196, decided by our brethren of the First Circuit in 1949. It should be noted that the opinion of the court by Judge Ellis quoted the general rule as set forth in 41 Am.Jur., but under the facts of the particular case the court found that the existence of an emergency justified the surgeon's procedure, without consent.
The reason for the rule is so obvious, so firmly imbedded in the dictates of common sense, and so necessary to the preservation of individual rights, that it neither necessitates nor merits discussion. The action of a surgeon who performs an operation without the consent of his patient, or some authorized person, clearly constitutes a trespass against the person in the nature of an assault and battery and subjects him to liability for damages.
It follows that determination must be made upon the basis of the established facts in the instant case, first, as to whether it is established that the patient consented to the operation, or second, if any unforeseen development in the nature of an emergency required the extensive operative procedure which was actually carried out, and, finally, if the health of the patient necessitated the procedure, whether the consent of an authorized personin this case, the husband, was sought and obtained.
We think the record abundantly substantiates Mrs. Rogers' contention that she never at any time gave her consent to any operation except for the removal of her appendix, and, even further, that she was ignorant of any possibility of an operation for the removal of her reproductive organs.
We perceive no necessity for detailing Mrs. Rogers' medical history, except for the purpose of emphasizing a few pertinent facts. Mrs. Rogers was the mother of one child, a daughter by her first marriage, but after her second marriage, to Mr. Rogers, despite their desire for children she had been unable to conceive, and in December of 1952 she consulted Dr. Mason with reference to this problem. Certain treatments were administered but Dr. Mason was not again consulted after late July of 1953 until March 6, 1958. The testimony is completely convincing on the point that Mrs. Rogers was distressed by her inability to bear children; that this circumstance was of serious importance in her mind, and that her consultations with and treatment by both Dr. Mason and Dr. Palmer, by whom she had been treated for a period of time prior to March, 1958, were primarily motivated by her continuing and persistent determination to overcome her sterile condition. The importance of this circumstance lies in the implicit corroboration which it lends to Mrs. Rogers' positive testimony that she never, at any time, consented to an operation which would have effected the removal of her reproductive organs. Additional weight on this point must be attached to her testimony, which is supported by other witnesses, that after her recovery from anaesthesia, and upon the occasion of his first post-operative visit, she charged Dr. Mason with "double crossing" her. At this time she had been informed by Dr. Palmer as to the full nature and extent of the operation performed.
Careful examination of the testimony of Dr. Mason strongly supports, rather than weakens, the conclusion that Mrs. Rogers did not consent to the performance of the operative procedure which was taken, for he testified that there was no mention about any type of surgery with the exception of the proposed appendectomy; that he did not himself think there was a possibility of performing a hysterectomy.
In support of the defenses urged, it is pointed out that Dr. Mason noted on his office history and diary of Mrs. Rogers the memorandum"Gyn. lap. soon", which he testified was written on the occasion of his examination on March 6, 1958, and meant "gynecological laparotomy". On the date of this examination Dr. Mason posted *652 Mrs. Rogers for an operation to be performed at the Physicians & Surgeons Hospital in Shreveport on March 18, 1958. By way of a further element of defense as to consent, it is insisted that Mrs. Rogers consented to the operative procedure at the time of her admission to the hospital on March 17th. The hospital record contains, inter alia, the following printed form provision:
 "Authority to Operate
 Date 3/17/58 
I hereby authorize the Physician or Physicians in charge to administer such treatment and the surgeon to have administered such anesthetics as found necessary to perform this operation which is advisable in the treatment of this patient.
Signed Dolly Rogers 
 Patient or nearest relative
Witness ____________________________
Witness J. L. T. "
We think the above so-called authorization is so ambiguous as to be almost completely worthless, and, certainly, since it fails to designate the nature of the operation authorized, and for which consent was given, it can have no possible weight under the factual circumstances of the instant case.
Reverting to an analysis of Dr. Mason's testimony there is one fact which can be regarded as clearly and uncontrovertibly established therein, namely, that the doctor remembered little, if anything, as to what he had actually told his patient, Mrs. Rogers. His testimony is replete with such phrases as: "I probably told her"; "I am sure I said more or less the same thing to her"; "there was no mention of what I was going to do"; "I usually tell them"; etc. The witness admitted that he had a rather poor memory; that the discussions with Mrs. Rogers were remote in period of time from the date of trial, and at no time did he attempt to make any positive or definite statement as to any exact details which would have served to establish Mrs. Rogers' knowledge and consent.
As we have above noted, we think the conclusion is inescapable that Mrs. Rogers never, at any time, consented to the extensive operative procedure which was undertaken for the removal of her reproductive organs. Her very concern and her continued efforts to find some relief from her sterile condition destroys the very idea, in the absence of absolute necessity, that she would have consented to surgical action which would forever destroy even the hope of bearing children. In our minds there is no question as to the fact that the extent of the operation to which Mrs. Rogers gave her consent was the removal of her appendix.
It must further be observed that the alleged defenses of emergency, or of the necessity for the operations performed in the interest of the health of the patient, are completely demolished by the testimony of Dr. Mason that no emergency existed and that he removed the female organs as a precautionary measure and because he felt it was good surgical procedure. Conceding, and we have no doubt as to the absolute good faith of Dr. Mason in this evaluation, the desirability, from the standpoint of surgical judgment, of carrying out the drastic operative procedure, this can have no possible effect upon the legal issue of consent to which we first turned our attention in this opinion.
There is another element involved in weighing the factual circumstances of the instant case. Mrs. Rogers' husband, her married daughter and son-in-law were present in the hospital during the entire time of the operation, and during this period were either in Mrs. Rogers' room or the hallway immediately adjacent thereto on the floor below the operating room. Obviously at the time Dr. Mason opened Mrs. Rogers' abdomen by a midline incision, she was under anaesthesia, and, therefore, could not possibly have given or refused consent to *653 the action which the surgeons declared to be in accord with good operative procedure, but which extended far beyond the nature of the operation originally determined upon. However, it appears that under the circumstances it would have been entirely feasible and practicable to make immediate contact with the husband, Mr. Rogers, for the purpose of obtaining his consent. That no such action was taken is conclusively established by the record. Although Dr. Mason testified that his usual procedure was to notify relatives of the patient in the event of occurrence of any complications or discovery of the need for surgery not originally contemplated, he did not testify that any such effort had been made in this case, nor was any witness produced on trial to testify that such action had been taken. Mr. Rogers testified positively that his consent had never been requested nor given.
Despite our conclusion, we intend no adverse criticism of the medical judgment of the operating surgeons, but the fact remains that their actions constituted an offense for which, under the law, they are liable in damages. It is a gratuitous observation to declare that protection against such liability in the vast majority of cases is readily available by an exceedingly easy and simple procedure prior to the actual performance of an operation.
On the issue of quantum, we find that the effect of the radical operative procedure has caused real compensable injury to the plaintiff, Mrs. Rogers. It is established that she has suffered from a highly nervous condition; from disability to perform ordinary household tasks; has undergone a considerable amount of physical pain and mental anguish, etc. After consideration of the various elements of damage which have been sustained, we feel that an award of $3,500 represents an adequate monetary compensation.
The record leaves much to be desired as to the damages in the nature of medical expense claimed by the plaintiff husband, but his testimony that such expenses averaged approximately $18 per month beginning shortly after the operation and continuing up to the time of trial some eighteen months later, stands uncontradicted and is supported, at least in part, by statements of bills for medicines purchased, duly introduced in evidence. We think an allowance of $300 would be a conservative approximation of the amount of damages established.
It is noted that the judgment finally rendered and signed, and from which this appeal was taken, in addition to rejecting the demands of plaintiffs, fixed the fees of expert medical witnesses, and no contention is made as to error in this latter respect.
For the reasons assigned the judgment appealed from is set aside, annulled and reversed, insofar as it rejected the demands of plaintiffs, and,
It Is Now Ordered, Adjudged and Decreed that there be judgment in favor of plaintiff, Mrs. Dolly Rogers, and against the defendants, L. Keith Mason, Fleater Palmer, Jr., and Lumbermens Mutual Casualty Company, in solido, in the full sum of $3,500, together with 5% per annum interest thereon from date of judicial demand until paid.
It Is Further Ordered, Adjudged and Decreed that there be judgment in favor of the plaintiff, Claude Rogers, and against the defendants, L. Keith Mason, Fleater Palmer, Jr., and Lumbermens Mutual Casualty Company, in solido, in the full sum of $300, with interest thereon at the rate of 5% per annum from date of judicial demand until paid.
That portion of the judgment appealed from fixing the fees of expert medical witnesses is affirmed.
Defendants are taxed with all costs of both courts.