324 So.2d 21 (1975)
Rev. Louis M. COPPAGE, Plaintiff-Appellant,
v.
Dr. D. E. GAMBLE et al., Defendants-Appellees.
No. 12702.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
Rehearing Denied January 6, 1976.
Writ Refused February 11, 1976.
*22 Pittman & Matheny, Hammond, for appellant.
Joseph R. Bethard, Shreveport, for Dr. D. E. Gamble, appellee.
Mayer & Smith by Alex F. Smith, Jr., Shreveport, for appellees, Fairfield Corp. d/b/a Fairfield Hospital & St. Paul Fire & Marine Ins. Co.
Walter J. Horrell, Baton Rouge, for La. Health, Social & Rehabilitation Services Adm., appellee.
Adams & Reese, New Orleans, and Cook, Clark, Egan, Yancey & King by Sidney E. Cook, Shreveport, for La. State Bd. of Medical Examiners, appellee.
*23 Before BOLIN, HALL and DENNIS, JJ.
En Banc. Rehearing Denied January 6, 1976.
Writ Refused February 11, 1976. See 325 So.2d 819.
DENNIS, Judge.
Following an operation which allegedly resulted in the deformity of his left foot, plaintiff instituted this action in tort for the recovery of damages against his podiatrist, the hospital in which the surgery was performed, and their insurer. Plaintiff contended that he did not consent to part of the surgery undertaken by the podiatrist that the entire operation was unnecessary; that the surgery was performed negligently; and that the hospital was negligent in allowing the podiatrist to perform the operation on its premises. The trial judge found that the plaintiff had failed to prove any of these contentions by a preponderance of the evidence. Plaintiff appealed from an adverse judgment rejecting all of his demands. We find no error in the decision below and affirm for the reasons hereinafter stated.
Rev. Louis Coppage, the plaintiff, suffered from congenital flat-feet. Before the events giving rise to this suit he had seen several podiatrists who had fitted him with arch supports, and had removed calluses which repeatedly formed on his feet. In January of 1971 he placed himself under the care of one of the defendants, Dr. D. E. Gamble, a Shreveport podiatrist, who at first continued the same type of conservative treatment. On November 15, 1971 Rev. Coppage visited Dr. Gamble's office complaining of acute pain in his left foot. After an examination which included x-rays, Dr. Gamble recommended surgery as a means of alleviating the more serious condition which had developed.
Rev. Coppage entered the Fairfield Hospital in Shreveport on November 22, 1971 where surgery was performed on him the following day. Dr. Gamble failed to obtain from Rev. Coppage a written authorization for the operation. A local anesthetic was used in the area of the surgery, and the patient was given an oral sedative which left him conscious but groggy during the operation. Dr. Gamble made an incision in the bottom of his left foot and removed a callus. Using the same opening he also removed the head of the fourth metatarsal bone, shaved down the fifth metatarsal head, and removed some tissue he suspected of being a tumor. Rev. Coppage convalesced uneventfully and was given post-operative treatment by Dr. Gamble for one or two months after his discharge from the hospital on November 26, 1971.
The foregoing facts are undisputed, but plaintiff contends he did not consent to the removal of any part of the metatarsal bone itself and that he intended to submit merely to the removal of a spur from one of his metatarsals. He testified that he did not realize the true nature of the surgery which had been performed until Dr. Gamble showed him some x-rays of his foot during his last visit to the podiatrist's office. Rev. Coppage admitted, however, that he had not complained to Dr. Gamble about the alleged unauthorized surgery until filing this lawsuit on November 22, 1972.
The universally recognized and accepted general rule is that the consent of a patient is a prerequisite to a surgical operation, and the surgeon who performs an operation without his patient's consent, express or implied, commits a battery subjecting himself to liability in damages. This general rule, which is subject to exceptions not here pertinent, extends to the performance of operations different in nature from that for which a consent was given, and to operations involving risks and results not contemplated. Rogers v. Lumbermens Mutual Casualty Company, 119 So.2d 649 (La.App., 2d Cir. 1960). Express consent is not sacramental, however, and under proper circumstances may be implied or presumed. Carroll v. Chapman, 139 So.2d 61 (La.App., 2d Cir. 1962).
Dr. Gamble testified that on November 15, 1971 in his office he fully explained the *24 proposed operation to Rev. Coppage. In support of his testimony the podiatrist introduced rough drawings depicting the removal of the head of a metatarsal bone which he said were sketched during the office conference to facilitate the patient's understanding of the contemplated surgery. Dr. Gamble said he thought he had explained the operation to him again at the hospital just before the surgery. Although he was not certain of this at the trial, the hospital progress notes did contain a statement by the podiatrist that the operation was explained to the patient at the hospital. Dr. Gamble testified that Rev. Coppage consented to the operation, voluntarily entered the hospital and submitted to the surgery.
Despite Rev. Coppage's testimony that he was shown no drawings and was told only a bone spur would be removed, the trial judge found that he had consented to the entire operation and that the podiatrist had not gone beyond the bounds of the consent given. The trial court opinion, in pertinent part, provides:
"There is no doubt or dispute but that plaintiff consented to an operation on his left foot which was to be performed in the hospital and which required plaintiff to spend a night in the hospital before the operation. * * * Plaintiff testified that he was never told that the operation would require the removal of a portion of the bones of his foot. On the other hand, Dr. Gamble testified just as clearly that the nature of the operation was explained to plaintiff in detail and in the process he drew pictures of what he intended to do on plaintiff's x-ray envelope. * * * Absence of consent to the operation has not been established. He further testified he had demonstrated the enlarged metatarsal head by palpation and saw the painful callous on the bottom of plaintiff's foot under the enlarged metatarsal head."
From our review of the record we conclude that the trial judge committed no manifest error in finding that Rev. Coppage either orally expressed his consent to the entire operation or impliedly authorized it by his actions.
Nevertheless, the plaintiff argues, even if he consented to the operation, the trial court's rejection of his causes of action predicated on the alleged malpractice of the podiatrist and alleged negligence of the hospital was erroneous in many respects. He assigns as errors the trial court's failure to find that Dr. Gamble was not qualified to perform the surgery; that the surgery was unnecessary; that the surgery was negligently performed; that Fairfield Hospital was negligent in disregarding its own rule prohibiting the admission of patients without the authorization of a medical doctor; and that Fairfield Hospital was vicariously responsible for the acts of Dr. Gamble.
The Louisiana Revised Statutes, Title 37, Chapter 7, sets forth the definition and requirements of a license for the practice of podiatry:
"§ 611. Definitions
As used in this Chapter:

* * * * * *
(3) `Podiatry' means the diagnosis and the medical, surgical or physical treatment of ailments, excluding systemic diseases, of the human foot. The foot is defined as that portion of the body distal to or beneath, and not including, the ankle or tibiotalar joint. Podiatry includes the surgical treatment of ailments of the foot as herein defined except osteotomies, arthrodesis, arthrotomies, or tendon transfers proximal to and including the tarso metatarsal joints. Surgical treatment of the foot as herein defined involving use of general or spinal anesthesia is prohibited unless such treatment is performed in a hospital accredited by the Joint Commission on Accreditation in the physical presence of a physician participant, other than an anesthesiologist, whose name shall be recorded on the operative record and who is licensed to *25 practice medicine by the Louisiana State Board of Medical Examiners.
"Podiatry does not include the administration of general or spinal anesthetics but does include the use of local anesthetics."
"§ 612. License required, examining board
No one shall practice the branch of medicine known as podiatry nor advertise or hold out as a podiatrist unless duly licensed to do so by the board after examination conducted by the board or a committee thereof."
* * * * * *
It is not disputed that Dr. Gamble was duly licensed to practice podiatry. Furthermore the surgical treatment administered by him did not involve the use of general or spinal anesthetics or extend beyond the foot as defined by the statute. Therefore, we find no merit whatsoever in the contention that Dr. Gamble was lacking in qualifications to perform the operation.
The law is well settled that a physician or surgeon owes a duty to his patient to possess and exercise the degree of skill ordinarily possessed and employed under similar circumstances by members of his profession in good standing in the same community or locality and to use reasonable care and diligence along with his best judgment in the application of his skill to the case before him. Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953); Uter v. Bone and Joint Clinic, 249 La. 851, 192 So.2d 100 (1966); Delaune v. Davis, 316 So.2d 7 (La.App., 1st Cir. 1975).
At the time of the trial Dr. Gamble had been practicing podiatric medicine in the city of Shreveport for approximately 22 years. He described for the court his basic education in podiatry, the positions he had held in professional organizations and his regular participation in post graduate courses and seminars in his field. The record is barren of any evidence that would indicate a failure by Dr. Gamble to attain that degree of competence ordinarily possessed by the members of his profession in good standing in his community.
Dr. Gamble testified that he found in his November 15, 1971 examination that Rev. Coppage had a deep neucleated callus under the fourth metatarsal, which in his opinion, based on the symptoms and his palpation of the patient's left foot, was produced by a spurring or enlargement of the metatarsal head. In his judgment this was a progressive condition caused by continual irritation of the metatarsal head by hard floor surfaces, and he recommended removal of the metatarsal head as the only means of attacking the source of the irritation and affording the patient a measure of permanent relief. He decided to enter the foot for this procedure from its bottom since it would be necessary to make an incision in that area to excise the deep neucleated callus. He admitted that the growth on the metatarsal head was not visible in x-rays taken before the surgery, but he stated enlargements such as these did not always show up on x-rays. Therefore, he considered the x-rays as an aid and not a controlling factor in making his diagnosis. Dr. Gamble then explained in detail all of the procedures he followed in completing the surgical treatment of Rev. Coppage. He described the operation as a common one for podiatrists, and stated that it was not unusual for him to remove 75 metatarsal heads a year in his practice.
The expert testimony, elicited from two orthopedists called by the plaintiff and one podiatrist called by Dr. Gamble, did not point out any instance in which Dr. Gamble failed to exercise the degree of skill and care ordinarily exercised by members of his profession in good standing in his community, or any instance in which he failed to use reasonable care and diligence *26 along with his best judgment in the application of his skill and learning to the case. In fact, the doctors and the podiatrist, when asked to assume the presence of the preoperative symptoms and conditions reported by Dr. Gamble, gave testimony which fully confirmed his diagnosis, election to employ surgical treatment and operative technique.
No probative evidence was advanced by the plaintiff to question the findings upon which Dr. Gamble based his recommendation that the metatarsal head be removed. Rev. Coppage testified that the acute pain in his left foot subsided sometime before his admission to the hospital and that he asked the doctor to postpone the operation. However, his testimony was incongruous with his own actions in voluntarily submitting to hospitalization and surgery, as well as the medical records which contained no mention of such a remission. Furthermore, the congenital, progressive nature of his foot disorder would make it unlikely that the surgery was no longer necessary, even if Rev. Coppage had reported a subsidence of pain to his podiatrist.
Plaintiff charges the podiatrist and the hospital with a multitude of additional imperfections in the handling of his case. We find no merit in these contentions because in each instance Rev. Coppage failed to establish that the alleged breach of a legal duty toward him by either the podiatrist or the hospital had caused the injury of which he complains.
For these reasons we conclude the trial court was correct in finding that plaintiff failed to prove that Dr. Gamble committed malpractice in either recommending or performing the surgical treatment or to establish any negligence on the part of Fairfield Hospital. Accordingly, the judgment below is affirmed at the cost of the appellant.
Affirmed.