361 So.2d 245 (1978)
Amelia BECK
v.
William LOVELL, M.D., et al.
No. 12063.
Court of Appeal of Louisiana, First Circuit.
July 10, 1978.
*248 Roy Maughan, Baton Rouge, of counsel for plaintiff-appellant Amelia Beck.
Frank Fertitta, Baton Rouge, of counsel for defendant-appellee Woman's Hospital and St. Paul Fire & Marine Ins. Co.
Kenneth E. Barnette, Baton Rouge, of counsel for defendant-appellee William Lovell, M.D., and St. Paul Fire & Marine Ins. Co.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiff (Appellant) appeals from judgment rejecting her claim against Dr. William Lovell and The Woman's Hospital (Defendants) and Defendants' insurer, St. Paul Fire and Marine Insurance Company, for alleged medical malpractice consisting of ligation of Appellant's fallopian tubes without Appellant's consent, which judgment was rendered pursuant to a jury verdict in favor of Defendants. We reverse and render judgment in favor of Appellant against Dr. Lovell and his insurer. We affirm the judgment rejecting Appellant's claim against The Woman's Hospital.
Three basic issues are presented on appeal: namely, alleged lack of patient consent to the surgical procedure; alleged erroneous jury instructions; and alleged improper introduction of impeachment evidence.

LACK OF PATIENT CONSENT
On February 21, 1975, Appellant, attended by Dr. Lovell, entered The Woman's Hospital in premature labor for the birth of her third child. With Appellant's consent, she had been scheduled for "Delivery-Possible C-Section". Although there was a known blood incompatibility between Appellant and her husband (Appellant being O-Rh negative and her husband being O-Rh positive), which condition poses a greater threat to each conceived child in succession, Appellant's first two children were born normal. It is conceded that the mentioned incompatibility poses absolutely no threat to the health or welfare of the mother.
Appellant was fully aware of the problem, having been so informed by Dr. Lovell who attended Appellant during her first two pregnancies. Pre-natal tests disclosed that the third child would be affected. During either the first or second pregnancy, Dr. Lovell suggested a hysterectomy which Appellant rejected as "too final". It is conceded that on numerous occasions, Appellant and Dr. Lovell discussed tubal ligation. Appellant maintains, however, that she never consented expressly or impliedly to ligation, but in every instance told Dr. Lovell she would think about it and let him know. Conversely, Dr. Lovell contends that his discussions led him to believe that Appellant *249 desired to have her tubes tied following delivery of the third child. Based on his belief that Appellant had consented during a visit early in the third pregnancy, he wrote "C-Section, T L" in large letters on the face of his office record to indicate that Appellant desired her tubes tied after the birth of the third child.
Upon admission to the hospital, some two or three hours prior to the delivery in question, Appellant was requested by the admitting nurse to sign a "Consent to Operation, Anesthetics and other Medical Services" form provided by the hospital. The form contained, among others, the following provision: "I am aware that sterility may result from this operation. I know that a sterile person is incapable of becoming a parent". This provision, at Appellant's insistence, was stricken from the form. The record does not show conclusively whether Appellant or the admitting nurse marked out the provision. As thus altered, the form accompanied Appellant's chart into the operating room and was present there during the surgical procedure.
Dr. Lovell was assisted in the delivery by Dr. Clinton Aubert, Obstetrician-Gynecologist. After delivery, Dr. Aubert asked Dr. Lovell whether the patient's tubes would be tied. The question of consent arose and was discussed by the physicians. Because the patient was under anesthesia and no hospital tubal ligation consent form was found on the patient's chart, Dr. Lovell sent one of the attending nurses into the hall where the form was presented to and signed by Appellant's husband. The nurse presented the signed form to Dr. Lovell who then performed the ligation.
In substance, Dr. Lovell testified that he was certain that Appellant desired tubal ligation. He understood that that was her wish prior to the delivery, and at the time in question, the patient was incapable of saying "yea or nay", as he expressed it. In effect, he testified that he had Appellant's express verbal consent, which he entered on his personal record by way of the above mentioned notation. He was firm in the statement that he would not have ligated the patient's tubes without her consent. It is to be noted that on appeal, defendants maintain that they do not rely upon the husband's written consent, but contend that Appellant gave her express or implied consent.
Appellant contradicted Dr. Lovell in that she was adamant in the position that she gave neither express nor implied consent to tubal ligation. She admitted that ligation had been discussed on several occasions, and that each time she told Dr. Lovell she would let him know. She added that during the discussion in the operating room she was aware of the conversation concerning ligation and she wished to voice objection, but was unable to speak out.
Mr. Beck's testimony is that he was of the opinion that his wife was opposed to ligation. He testified that Dr. Lovell spoke with him during the operation; that he told Dr. Lovell that he thought his wife was opposed; and that if the doctor would go back into the operating room and obtain his wife's consent, that he would sign the consent form. Shortly after the doctor returned to the operating room, according to Mr. Beck, a nurse returned with a consent form and reported that Mrs. Beck had consented and then he signed the form.
Gladys Crowley, nurse, testified that when no consent form was found on the patient's chart, Dr. Lovell requested she take a form to Mr. Beck for signature. She witnessed Mr. Beck's signature, brought the form into the operating room, and the ligation ensued.
A surgeon who performs an operation without the consent of a patient, or some authorized person, commits a trespass on the body of the patient, in the nature of a battery, and subjects himself to liability for damages. Coppage v. Gamble, 324 So.2d 21 (La.App. 2d Cir. 1975); Carrol v. Chapman, 139 So.2d 61 (La.App. 2d Cir. 1962); Rogers v. Lumbermens Mutual Casualty Company, 119 So.2d 649 (La.App. 2d Cir. 1960).
Consent of a patient, express or implied, is required prior to a surgical operation *250 and a surgeon who operates without such consent is liable in damages, except in case of an emergency requiring immediate surgery for preservation of life or health, under circumstances in which it is impractical to obtain the consent of the patient or someone authorized to assume such responsibility. Coppage v. Gamble, above; Rogers v. Lumbermens Mutual Casualty Company, above.
Although our own jurisprudence has never considered the issue, other jurisdictions hold that absent an emergency, the relationship of husband and wife does not confer authority for one spouse to grant permission for surgery on another. Karp v. Cooley, 493 F.2d 408 (5th Cir. 1974). We consider the rule reasonable and well founded. We adopt it as our own and apply it herein.
Our own jurisprudence is also silent on the specific issue of whether a surgeon may be held liable for the skillful performance of unauthorized surgery. It is the rule in other jurisdictions, however, that when the consent of a patient is necessary, a surgeon is liable in damages for the skillful performance of unauthorized surgery. Pedesky v. Bleiberg, 251 Cal.App.2d 119, 59 Cal.Rptr. 294 (2d Dist. 1967). We find this rule patently sound. We adopt the rule as our own, and apply it to the case at hand.

JURY INSTRUCTIONS
In a jury trial, the judge is not required to give the precise instructions submitted by either party, but he must give instructions which properly reflect the law applicable in the light of the pleadings and facts in each particular case. If instructions concerning negligence and liability are confusing or misleading, or omit an applicable essential legal principle, such instructions constitute reversible error. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975).
Appellant complains that the trial judge declined to give requested instructions 4, 6 and 8. Instruction 4 was that in the absence of an emergency, the relationship between husband and wife does not itself create authority for a husband to consent to an operation on his wife. Instruction 6 was to the effect that performance of an unauthorized operation does not relieve a surgeon of liability even though the surgery is skillfully performed. Instruction 8 was that a hospital is liable for the acts of its employees in an operating room, which acts cause injury to a patient even though the mistake or error involves an area not requiring special skill or judgment.
The trial court gave the following instructions:
"I have told you that the general standard to which the physician must conform is that degree of skill ordinarily employed under similar circumstances by the members of his profession in good standing in this or similar communities. In some instances that duty may extend to the responsibility to inform the patient of the dangers present in proposed treatment and the disclosure of material facts reasonably necessary to permit the patient to decide whether to consent to an operation or not.
The consent of a patient is a prerequisite to a surgical operation, and the surgeon who performs an operation without his patient's consent, express or implied, is liable in damages for a battery. This rule extends to the performance of operations different in nature from that for which a consent was given. This rule is subject to exceptions in the event of an emergency requiring immediate action for the preservation of the life or health of the patient under circumstances in which it is impossible or impracticable to obtain the patient's consent or the consent of anyone authorized to assume such responsibility.
The hospital, like all other employers in our society, may be held liable for the acts of negligence committed by its employees during the exercise of the functions for which they are employed. A patient is admitted to a hospital under an obligation owed to him by the hospital and its employees to provide such reasonable *251 care and attention for his safety as his mental and physical condition, as known to the defendants or its nurses or other employees, may require.
A hospital is not an insurer of a patient's safety, and the rules as to the care required are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen. The hospital is obligated to use reasonable care in light of the requirements of the patient's known condition.
A hospital is further bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities, as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached a duty of care it owes to a particular patient depends on the circumstances and facts of that particular case. . . .
Consent to the performance of an operation is not valid if it is obtained by misrepresentations which are false to the knowledge of the surgeon who gave them."
The issues raised before the jury by the evidence presented at trial impels the conclusion that the trial judge erred in refusing to give requested instruction 4. In this regard, Defendants introduced the consent form signed by Appellant's husband, despite the fact that the record shows that there was no emergency and, consequently, that the consent of the patient herself was indispensable. It is clear beyond doubt that the ligation could have been performed at any future time without risk or danger to the patient. Not having the benefit of requested instruction 4, the jury may well have concluded that the consent of the husband relieved the surgeon of liability.
We also consider as error the trial judge's refusal to give requested instruction 6 to the effect that skillful performance of unauthorized surgery does not relieve the surgeon of liability. The record shows that the ligation was skillfully performed and that plaintiff recovered without incident. Under such circumstances, the jury easily could have concluded that Appellant was not entitled to recover for unauthorized surgery because she suffered no harmful physical effects.
We find no error, however, in the trial judge's refusal to give requested instruction 8 concerning liability of a hospital for the actions of its employees. The instructions given made it clear to the jury that a hospital is not the insurer of the safety of its patients but, nevertheless, is liable for the acts of its employees in the exercise of any duty which the employee is engaged to perform. This would include, of course, duties performed in the operating room or elsewhere in a hospital.

ALLEGED IMPROPER ADMISSION OF IMPEACHMENT EVIDENCE
Appellant maintains that the trial judge prejudiced her case by allowing admission of evidence which cast doubt upon her character by tending to establish that Appellant's husband was not the father of Appellant's third child. Defendants contend the evidence was admissible to impeach Appellant's credibility inasmuch as the issue of consent is the crux of this case and must be determined in the light of the contradiction between the testimony of Appellant and Dr. Lovell.
Dr. Curtis Steele, Psychiatrist, was consulted by Appellant for depression following the tubal ligation. Dr. Steele testified that Appellant related a history of separation from her husband, a subsequent awareness of pregnancy and reconciliation because of the pregnancy, in that order. Defendants also produced expert testimony that the blood type of the third child was incompatible with that of Mr. and Mrs. Beck. Dr. Jack Holden, Pathologist, given the blood types of the parents and child, testified that it is genetically impossible for parents with such blood types to produce a *252 child with the blood type of the deceased infant.
Our jurisprudence is well established to the effect that general credibility of a witness may be impeached by showing that his general reputation for truth and veracity is not good. State v. Muse, 319 So.2d 920 (La.1975).
A witness's credibility may not be attacked by a showing of particular acts of immorality. State v. Bird, 302 So.2d 589 (La.1974).
While the foregoing rules were enunciated in criminal cases, the principles underlying the rules are equally applicable in civil cases. See Conner v. Pozo, 114 La. 562, 38 So. 454 (1905); Frazier v. Strauss & Sons, Inc., 173 So. 343 (La.App. 2d Cir. 1937).
In admitting the evidence as to blood types, the trial judge erred. The sole issue before us is whether Mrs. Beck impliedly or expressly consented to a tubal ligation. Parentage of the child is totally foreign to resolution of the question of consent. Defendants were entitled to impeach Appellant's general credibility by showing her lack of good general reputation for truthfulness and veracity, but not by showing an alleged isolated act of moral impropriety. We find the erroneous admission of such evidence easily could have prompted the jury to improperly reject Appellant's testimony for lack of veracity.
We conclude that the mentioned errors by the trial judge prejudiced Appellant's cause to the extent that the jury verdict herein must be set aside. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975).
Under the circumstances, the manifest error rule announced in Canter v. Koehring Company, 283 So.2d 716 (La.1973) is inapplicable and this court must determine the issues as a matter of first impression. Gonzales v. Xerox Corporation, above.
Inasmuch as this matter has been tried in full and is before us on a complete record, a remand is not in order and we must render judgment on the record. Gonzales v. Xerox Corporation, above.

HOSPITAL LIABILITY
Appellant contends that the hospital is liable, under the doctrine of respondeat superior, for the actions of its employees (nurses) in failing to obtain a signed tubal ligation consent form provided for just such an operation. It is also contended that the nurses were negligent in not advising the surgeon that no such form was signed by the patient. Finally, it is argued that the hospital is liable for Dr. Lovell's action in proceeding without proper authorization.
It is clear that attention of Dr. Lovell was directed to the fact that no tubal ligation consent form had been signed by the patient. When this was done, Dr. Lovell, who was in undisputed charge of the operating room, directed an attending nurse to seek consent of Appellant's husband. The nurse, acting on the doctor's orders, did as requested. Under the circumstances, we find no negligence on the part of the operating room nurse. Neither do we find any negligence on the part of the admitting nurse; she attached the form signed by Appellant to Appellant's chart which chart and form accompanied Appellant into the operating room. In so doing, she followed hospital regulations, and discharged her duty toward the patient.
The record is totally devoid of evidence to support the claim that the hospital is responsible for Dr. Lovell's actions under the doctrine of respondeat superior. It is not shown that the hospital had any control whatsoever of Dr. Lovell or the manner in which he conducted surgery.

SURGEON'S LIABILITY
Viewing the record in the light of the applicable rules of law, we find that Dr. Lovell did not have express or implied permission or consent from Appellant to ligate Appellant's tubes. Granted, there is a conflict of testimony on the pivotal issue of consent. Appellant consistently maintained she never gave such consent either expressly or by implication. She conceded knowledge and full awareness of her problems, but nevertheless rejected Dr. Lovell's suggestion *253 of a hysterectomy because she did not wish to become sterile. She also conceded discussion of ligation with Dr. Lovell, but never consented thereto, her position being that in each instance she advised Dr. Lovell she would think about it. She also states that had she been able to speak while lying on the operating table, she would have voiced her objection to tubal ligation.
Dr. Lovell's testimony is that he would not have marked his file indicating a C-section followed by tubal ligation unless he had Appellant's consent. He also stated in effect that while he did not recall Appellant specifically agreeing to ligation, he understood that that is what she wished and since Appellant was unable to consent while lying on the table, he felt he was doing her a favor by eliminating the need for subsequent surgery to ligate Appellant's tubes and the inconvenience and expense attending another operation. We cannot escape the conclusion that Dr. Lovell entertained some doubt as to whether Appellant had consented. Although there is no evidence that Dr. Lovell was aware of the deletion made on the form signed by Appellant on admission, said form was in the operating room and available to Dr. Lovell. Had he consulted the chart and noted the deletion, this should have caused him to question whether Appellant desired ligation, and should have alerted him to the possibility that even if Appellant had previously given such consent, she had changed her mind. Additionally, if Dr. Lovell was so certain that Appellant had given express verbal consent, as he contends, there would have been no need to require the husband's consent. In this connection, we note that in oral argument before this court, Defendants concede they are not relying upon the written consent of Appellant's husband.
We conclude that Dr. Lovell and his insurer are liable in damages for a tubal ligation performed upon Appellant without her express or implied consent, notwithstanding said operation was skillfully performed.

DAMAGES
We are unaware of any award for similar damages in our own jurisprudence. Appellant suggests an award of $75,000.00 based on the analagous case of Hundley v. St. Francis Hospital, 161 Cal.App.2d 800, 327 P.2d 131 (1st Div. 1958).
In this case, the record shows that Appellant became depressed following the ligation. She also became hostile toward her husband and Dr. Lovell. She experienced emotional problems for which she consulted psychiatrists. She even explored the possibility of re-construction in the hope of restoring fertility. The record shows that re-construction may or may not restore fertility.
All the circumstances of this case considered, we find that an award of $25,000.00 will do substantial justice between the parties.
It is ordered, adjudged and decreed that the judgment of the trial court rejecting Appellant's demands against Dr. Lovell and his insurer be and the same is hereby reversed and set aside and judgment rendered herein against said Defendants in the sum of $25,000.00 with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings. It is also ordered, adjudged and decreed that in all other respects the judgment is affirmed.
Affirmed in part, reversed in part and rendered.