411 So.2d 1150 (1982)
Karl J. PIZZALOTTO, M.D., Ltd.
v.
Dietrich WILSON.
No. 14581.
Court of Appeal of Louisiana, First Circuit.
March 2, 1982.
Rehearing Denied April 13, 1982.
*1151 W. Luther Wilson, Baton Rouge, for plaintiff-appellee Karl J. Pizzalotto, M.D., Ltd.
Roy Maughan, Baton Rouge, for defendant-appellant Dietrich Wilson.
Before ELLIS, LOTTINGER and PONDER, JJ.
PONDER, Judge.
Plaintiff, Dr. Karl Pizzolatto, filed suit on open account to collect for surgery he performed on the defendant, who reconvened with a malpractice action. Defendant appeals from an adverse judgment based upon jury verdict in the malpractice suit and the trial judge's decision that defendant owed the fee.
The issues are the jury instructions, the doctor's negligence in diagnosing the problem and performing the surgery and the lack of informed consent.
We affirm.
Ms. Wilson is a single woman in her late twenties with no children. She first went *1152 to see Dr. Pizzolatto due to severe cramping during her menstrual period. During the first visits, the doctor considered Ms. Wilson's problem to be pelvic inflammatory disease, endometriosis[1] or cysts in the ovary or tube area. He prescribed antibiotics for pelvic inflammatory disease. On a later visit he recommended a diagnostic laparoscopy[2] and D and C.[3]
The laparoscopy showed multiple adhesions within the abdominal cavity; however the examination of the reproductive organs was impaired because the adhesions had bound the tubes and ovaries to the uterus. The doctor's discharge note diagnosed Ms. Wilson's problem as pelvic pain, pelvic inflammatory disease, and endometriosis.
Two weeks later, when Dr. Pizzolatto recommended a laparotomy,[4] he did not discuss any alternative method of treatment or the risk of sterility. She did obtain a written explanation stating:
"Dx (1) Pelvic inflammatory disease, marked
(2) Endometriosis
Rec (1) LaparotomyLysis of adhesions, Fulguration of endometrioma"
Prior to her surgery, Ms. Wilson in writing consented to a laparotomy. The consent form contained the standard provisions that sterility might result from the surgery and that the consent extended to the performance of operations different from those contemplated where the doctor found it necessary.
Dr. Pizzolatto wrote on the hospital admission chart the same procedure that he had explained to Ms. Wilson but added "probable salpingo-oophorectomy,"[5] although the latter had not been discussed with Ms. Wilson.
When the doctor entered the abdominal cavity, he found extensive endometrial adhesions much worse than he had anticipated, so extensive as to render Ms. Wilson sterile. He felt that the failure to remove the reproductive organs would result in pain and infection necessitating more surgery prior to the patient's leaving the hospital. After the assisting surgeon concurred in this finding, Dr. Pizzolatto proceeded to perform a total hysterectomy and bilateral salpingo-oophorectomy.
Ms. Wilson became very upset when she learned that a total hysterectomy had been performed. Her recovery from the surgery was otherwise uneventful.
Appellant's contention that the jury's verdict was contrary to the law and the evidence is based upon a jury instruction that it is not malpractice to make a mistake in diagnosis, an instruction that a physician is presumed to have done his duty; a refusal to give a jury instruction that a consent to surgery is invalid if obtained by false representation; and the conclusions that she has proved (a) appellee's negligence in failing to diagnose her endometrosis and to treat it with drugs and conservative surgery; (b) he performed the salpingo-oophorectomy without her consent, either express or implied, (c) he did not reveal to her the possibility of the removal of the reproductive organs and (d) there was no immediate danger to her life and health to justify the removal without her express consent.
Ms. Wilson contends that the trial court erred in instructing the jury that it is not malpractice to make a mistake in diagnosis. One isolated sentence might have been subject to the interpretation placed on it by plaintiff. However, the instruction as a whole makes it clear that the physician's conduct in making a diagnosis must be compared to the degree of skill employed by *1153 other members of the same speciality.[6] We find no error.
Defendant objected to the instruction that the law accords the medical practitioner the presumption that he has done his duty in the absence of evidence to the contrary. Ms. Wilson has the burden of proving that Dr. Pizzolatto deviated from the standard of care required by his speciality. That portion of the instruction, when read with the rest of the instruction, is not in error. Bryant v. St. Paul Fire and Marine Ins. Co., 382 So.2d 234 (3rd Cir. 1980).
Ms. Wilson complains of the failure to instruct that "consent is invalid if obtained by representations which are false to the knowledge of the surgeon." Although this instruction has been approved by the jurisprudence,[7] we find that the trial judge did not err by omitting the instruction. The only misrepresentation charged is a failure to disclose. The instructions properly and adequately instructed the jury on the doctor's duty to disclose all known information material to the patient's decision.
Appellant's other complaints as to the verdict being contrary to the law and the evidence because of what she contends she has proved are attacks upon the conclusions reached by the jury as to the credibility of the witnesses and the weight of the evidence.
Without a recounting of all the evidence and the instructions given the jury, suffice it to say that we have closely examined both and find that the conclusions are based upon evidence, some conflicting, and that the instructions given to the jury are correct and adequate.
Appellant complains also that she was cast in judgment for Dr. Pizzolatto's fee for the surgery performed without her consent. Both the judge and the jury found on conflicting evidence that there was consent either express or implied. We find no error.
For these reasons the judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] A condition in which tissue resembling the uterine mucous membrane occurs aberrantly in the pelvic cavity.
[2] An examination by instrument inserted into body cavity.
[3] Dilation and curettement, dilation of cervix of uterus and removal of growth or other material from the wall of the uterus.
[4] A surgical incision, usually in the abdomen.
[5] The surgical removal of a uterine tube and ovary.
[6] "One of the duties of the physician is to make a diagnosis of the ailment of his patient, and if a physician fails to use a degree of skill ordinarily employed under similar circumstances by members of his profession in the same medical specialty in making that diagnosis, then you may conclude that he was negligent in his conduct. But a physician is not obligated in making a diagnosis to be correct all the time. It is not malpractice to make a mistake in diagnosis. Making a diagnosis is an act of professional judgment, and an incorrect diagnosis is not necessarily an act of negligence. You must consider a physician's conduct in making a diagnosis in comparison to the degree of skill in diagnoses ordinarily employed by other members of the profession in the same medical specialty."
[7] Beck v. Lovell, 361 So.2d 245 (1st Cir. 1978), writ denied 362 So.2d 802 (La.1978).