416 So.2d 170 (1982)
Mrs. Marie BROWN, et al.
v.
Emile A. SOUPENNE, et al.
No. 12785.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 1982.
Rehearing Denied July 16, 1982.
*171 René A. Curry, Jr., New Orleans, for appellees.
Kerry E. Shields, Keaty & Keaty, New Orleans, for appellants.
Milton E. Brener, Garon, Brener & McNeely, New Orleans, for appellee, Emile A. Soupenne.
Before REDMANN, LOBRANO and AUGUSTINE, JJ.
LOBRANO, Judge.
On January 28, 1977 Mrs. Marie Brown instituted these proceedings seeking damages for injuries she sustained as a result of an accident that occurred on June 30, 1976 at the premises 1428 Marigny Street. The original suit was filed against Emile A. Soupenne (Soupenne) the owner of the premises. However, on January 15, 1979 plaintiff amended her suit adding J. W. Stroughter, individually and d/b/a J. W. Stroughter and Associates Realty (Stroughter) as parties defendant. Her amended petition alleged that Stroughter was Soupenne's agent in the management of the subject property, and as such breached his obligations which resulted in her injuries. Soupenne third partied Stroughter, Stroughter third partied Soupenne, and they both third partied Eddie Brown, Jr., the lessee of the premises. During the pendancy of the proceedings Mrs. Brown died and her heirs were substituted as parties plaintiff. Additionally, they amended the suit to allege a cause of action on their own behalf for the wrongful death of Mrs. Marie Brown. On March 31, 1980 Stroughter filed a peremptory exception of prescription on the grounds that he was made a defendant more than one year from the accident date of June 30, 1976. This exception was denied by the trial court on April 15, 1980.
The matter was tried before a jury in March, 1981. After the close of plaintiff's case, the trial judge granted defendants' motion for a directed verdict on the wrongful death cause of action. At the conclusion of the trial the jury found Stroughter responsible for the injuries sustained by plaintiff, and awarded her estate damages in the amount of $35,000.00. All other parties were exonerated from responsibility.[1] Thereafter, Stroughter reurged his peremptory exception of prescription on the basis that since Soupenne was not liable, he (Stroughter) was not a joint tort feasor, nor a solidary obligor with Soupenne, and therefore prescription was not interrupted. The trial court sustained his exceptions, and dismissed appellants' case.
The heirs of Marie Brown perfected this appeal urging the following errors:

*172 a) The Court failed to instruct the jury that Stroughter was bound in accordance with the pronunciations of Loescher v. Parr, 324 So.2d 441 (La. 1975).
b) The Court erred in granting a directed verdict dismissing the wrongful death claim.
c) The peremptory exception of Stroughter was improperly maintained.
d) The Court erred in excluding from evidence the statement of Charity Hospital.
Facts
Emile A. Soupenne purchased the property at 1426-1428 Marigny Street sometime in 1964. When his wife passed away in December of 1971 he engaged the services of J. W. Stroughter to collect the rent from said property and to "manage" same. Being a postal worker he had to work 10 to 12 hours a day and did not have the time to handle it himself. He chose Mr. Stroughter because he (Stroughter) was handling similar rental property for Soupenne on Laharpe Street. The agreement between Soupenne and Stroughter is best characterized as a managerial contract, whereby Stroughter would collect the rent, receive complaints from tenants, notify the owner of same, and make the necessary repairs if agreed to by the owner. His commission was fixed at 10% of the rent collected. There is some dispute as to whether he received a fee for arranging whatever repair work might be needed.
Sometime in 1972, Stroughter leased the premises 1428 Marigny St. to Eddie Brown, Jr. and his wife. The record shows that on June 30, 1976, Mrs. Marie Brown, while visiting her daughter-in-law, either fell through a rotten floor in the washroom area of the building or fell through a pre-existing hole that had been covered with a carpet or linoleum. Eddie Brown, Jr. testified that there was no pre-existing hole in the floor, whereas the allegations of Mrs. Brown's original petition states that she fell through a hole in the floor that was covered with a rug. In either case, the fall caused her injuries which resulted in the instant case.
We are not unmindful of our duties as set forth in Canter v. Koehring, 283 So.2d 716 (La.1973), and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) but in those situations wherein a jury finding is based on an erroneous or incomplete jury charge, we are bound to set aside the judgment which implemented that jury verdict and determine the issues as a matter of first impression. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Beck v. Lovell, 361 So.2d 245 (La.App. 1st Cir. 1978). A judge is not required to give the precise instructions submitted by either party, but he must not give instructions that are misleading or confusing, or omit an applicable essential legal principle. Beck v. Lovell, supra. Since the entire record is before us, the interests of judicial economy and efficiency, as well as our Constitutional and statutory law require us to decide the issues rather than remand same. Gonzales v. Xerox Corporation, supra; La.Const. Art. 5, Sec. 10; La.C.C.P. Art. 2164.
Landowner's Liability
The owner of a building is responsible for the injuries caused by its "ruin", whether such ruin is due to a vice in the original construction or through his neglect to repair it. La.C.C. Art. 2322.[2] The landowner is "... bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor ...". La.C.C. Art. 660. Our jurisprudence is clear that the liability imposed upon the building owner under the above referred to codal articles is a strict liability, and neither ignorance of the building condition, nor an undetectable defect will absolve the owner from that *173 liability. Only the fault of a third person, or the fault of the victim, will absolve the owner from responsibility. In addition, his responsibility is non-delegable. Olsen v. Shell Oil, 365 So.2d 1285, (La.1978), rehearing denied January 26, 1979.
Under Olsen, supra, the following three requirements must be met before liability will be imposed: (1) There must be a building; (2) the defendant must be its owner; and (3) there must be a "ruin" caused by a vice in construction or neglect to repair, which occasions the damage sought to be recognized. For purposes of Article 2322, "ruin" has been defined to mean the actual collapse or fall of a building or one of its components. It also contemplates a situation in which some part of the building collapses, or breaks or gives away. Davis v. Royal Globe Insurance Co., 257 La. 523, 242 So.2d 839 (1970).
Although the testimony is contradictory as to whether Mrs. Brown fell through weak or rotten boards in the building or through a pre-existing hole in the floor, it is clear to this court that either instance is a "ruin" contemplated by Article 2322. It is equally clear that the premises 1428 Marigny St. is a building, and that defendant Soupenne was the owner of that building. Despite these facts, the jury found no liability on the part of the landowner. This is clear error, and we must reverse that finding.
As noted above, one of the defenses that may absolve the landowner from strict liability is the fault of a third person, "... where the `third person' is a stranger rather than a person acting with the consent of the owner in the performance of the owner's non-delegable duty to keep his building in repair." Olsen, supra, at 1293, 1294. The trial court erred in its instructions to the jury relative to third party fault in that it failed to explain that the third party must be a person other than one acting with the consent of the owner or on his behalf. The pertinent instructions given by the court were as follows:
"He can be released only if the thing owned by him causes damage not because of its defect, but rather because of the fault of the victim or some third person or because the harm is caused by an irresistible force."
* * * * * *
"Another defense which the law permits the owner of the defective premises to raise is that some third person such as the tenant himself, Mr. Brown, for whose conduct the owner is not responsible, was at fault and thereby caused the plaintiff's injury. If you conclude that a third person such as Mr. Brown did act in such a way and failed to make those reasonable precautions for plaintiff's safety that we could expect a reasonable person to take under these circumstances and that the plaintiff's injury resulted from that conduct, then you must also return a verdict for the defendant."
The court should have further instructed the jury that the third party must not be a party acting with the owner's consent or on his behalf. By failing to do so, the jury was erroneously informed on the defense of third party fault which prevented a proper determination of the facts and issues. Although they found that Stroughter breached a duty owed to Mrs. Brown which resulted in her injuries, his (Stroughter's) is not the third party fault contemplated by the law to absolve the landowner's strict liability. Stroughter was the agent-manager of the landowner and thus was acting with his consent and permission. He was not a "stranger" third party.
We understand that appellant has not complained of this erroneous charge in his specifications of error, nor did he object to same prior to the jury retiring, we are nevertheless compelled to hold as we do in the interest of what is just and proper on the record. La.C.C.P. Art. 2164.
Exception of Prescription
As previously noted in our recitation of the facts, Stroughter was not made a defendant until more than two years after the accident date. Because of the jury finding no liability on Soupenne, the trial court properly upheld the exception of prescription. *174 However, that ruling must necessarily be reversed in view of our holding this date with respect to the liability of Soupenne.
Our Civil Code provides:
"A suit brought against one of the debtors in solido interrupts prescription with regard to all." La.C.C. Art. 2097.

"There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them exonerates the others toward the creditor." La.C.C. Art. 2091.

Whenever the injured party can compel restitution for the whole of his damages from either debtor, those debtors are liable in solido. See Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981). Foster v. Hampton, 381 So.2d 789 (La.1980). Even though the legal basis for Soupenne's liability is different from that of Stroughter's, since both are liable for the whole of the debt, suit against one interrupts prescription as to the other. Having overruled the exception of prescription, we must next necessarily consider the arguments of Stroughter with respect to his liability.
Agent's Liability
In keeping with Gonzales, and Beck, supra, we shall proceed to decide the issues of Stroughter's liability. Appellants complain that the trial court failed to give a strict liability charge as it pertains to Stroughter's responsibility. They argue that Loescher v. Parr, 324 So.2d 441 (La.1975), and La.C.C. Art. 2317, both impose strict liability to one entrusted with the custody of a thing. We agree with that interpretation of the law, however we find no facts in the record to substantiate a strict liability charge with respect to Stroughter. He did not have custody of the premises, nor was he the owner, and the trial judge's negligence charge, rather than a strict liability charge, was proper.
The jury found that Stroughter was negligent in his duty to Mrs. Brown which was a cause of the accident, and further that he breached a duty owed Soupenne, the landowner. In examining the correctness of these findings, we must first determine what duty was owed to Mrs. Brown. Stroughter entered into a verbal contract with Soupenne, which, according to Stroughter's testimony involved only collecting rent, evicting tenants, if necessary, and reporting all complaints to the owner. However, according to Soupenne's testimony it involved much more, specifically the actual repair and maintenance of the premises. Both agree that a 10% commission was paid to Stroughter. This Court finds that Stroughter's obligations to Soupenne are best set forth by the following series of questions posed by the trial judge.
"Q. Let me just ask you a few questions. The services your company performed for Mr. Soupenne included collecting rent, correct?
A. Correct.
Q. Finding new tenants?
A. Correct.
Q. Handling the eviction which the tenants had to be put out?
A. Correct.
Q. If a complaint was made, the complaints were made to your company?
A. Correct.
Q. The owner had nothing to do with the property until the complaints were made?
A. Correct.
Q. And then you all hirednotified the owner explaining the condition and together with the owner decided what repairs were to be made?
A. The owner would tell us what to do.
Q. And you all would handle the repairs through Driscoll, and a choice or optionthe owner had the choice to do it, also?
A. He had that choice.
Q. Was it Mr. Soupenne's custom as to all repairs on the Marigny Street property and Laharpe St. property to let Stroughter Realty make the repairs, to the best of your knowledge?

*175 A. He would tell us what to do, Judge.
Q. He would tell you what to do, but you all actually hired Driscoll or someone else to make the repairs, to the best of your knowledge?
A. Yes.
Q. No outside contractor by Mr. Soupenne was hired, to your knowledge, to repair either one of the properties?
A. No."
However, these obligations were undertaken for the benefit of Soupenne, and a breach of any of them by Stroughter does not necessarily indicate a breach of a duty owed to Mrs. Brown. An agent by undertaking contractual obligations with his principal does not increase his responsibilities to third persons, and cannot be liable to those third persons by his failure to perform those obligations.
A review of the record convinces us of the following facts. Stroughter has been in the real estate management business since 1953, manages over 4,000 pieces of real estate and employs 16 persons, one of whom is Mr. McCormick who who handles repairs. Both Stroughter and McCormick testified that at the time of the accident tenant complaints were received by any one of six secretaries in his office. Those complaints were then relayed to McCormick, who would contact the property owners and arrange for the repairs. Of course, Stroughter received a 10% commission on the rents collected. Eddie Brown, Jr., the tenant, testified that he made complaints on several occasions to Stroughter's employees about various needed repairs, including a squeaking floor of the washroom. He stated that he tried to see Stroughter, personally, on numerous occasions but was unsuccessful. Brown's testimony is contradicted by Stroughter and McCormick, who stated they never received any complaints. However, it is also apparent that there were no formal procedures for the documentation of complaints and no record keeping system. If a secretary remembered a complaint, she would tell McCormick. If not, the complaint would go unattended.
We hold that Stroughter breached his contractual obligations to Soupenne by failing to report the complaints of Eddie Brown, Jr., thus depriving Soupenne the opportunity to properly repair the premises. Every contract for work or services carries the implied obligation to perform in a good manner. Failure to do so will necessarily require the defaulting party to respond for the losses that are incurred. See Tiger Well Services, Inc. v. Kimball Production Co., 343 So.2d 1153 (La.App. 3rd Cir. 1977). The failure of Stroughter to fulfill his obligations to Soupenne is not a breach of any duty owed to Mrs. Brown, and therefore we reverse the jury verdict in that regard. We do, however, affirm the jury's finding that Stroughter breached his obligations to Soupenne.
Wrongful Death Claim
Plaintiff's contend that the trial court erred as a matter of law in granting a motion for directed verdict on appellant's cause of action for wrongful death. In Louisiana, the procedure for directed verdicts is contained in LSA C.C.P. Art. 1810. In pertinent part, the statute states:
"A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury." La.C.C.P. Art. 1810.

The standard of proof to be applied by the court in ruling on a motion for a directed verdict is clearly set out in Schielder v. Schwegmann Bros., 411 So.2d 1220 (La.App. 4th Cir. 1982).
*176 In that case we held that since the language of the La. Statute is taken directly from F.R.C.P. 50(a) we would adopt the federal standard as enunciated by the Fifth Circuit Court of Appeals in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969), which is as follows:
"On motions for directed verdict and for judgment notwithstanding the verdict the court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury." id. at p. 374.

The La.Sup.Ct. approved this standard in Breithaupt v. Sellers, 390 So.2d 870 (La. 1980). See also Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979); Grimes v. Stander, 394 So.2d 1332 (La.App. 1st Cir. 1981); Gunter v. Plauche, 399 So.2d 727 (La.App. 1st Cir. 1981).
It is quite clear that in Louisiana the test is a "reasonable men" standard. Appellants incorrectly state that the standard is one such that if there exist any material factual disputes, the question must go to a jury. It is apparent from the record, that the facts and inferences of this case point so strongly and overwhelmingly in favor of one party that the Court believed that reasonable men could not arrive at a contrary verdict, and therefore granted the motion for directed verdict.
In granting the directed verdict the trial judge stated:
"This court has never previously ever granted a directed verdict on an issue in a jury trial, firmly believing in the jury system and the jury's right to decide all the issues of fact submitted to it." (Tr. vol. 6, page 65-66)
The Judge based his directed verdict, among other things, on the fact that "the plaintiffs witness (Dr. Manale the only witness who treated the deceased), clearly concludes, that the trauma did not, in the clearest of terms, contribute to her death." Furthermore, the Judge stated:
"So you have no experts from the plaintiffs whatsoever in this record that have connected the fall to her preexisting conditions to her death." (Trial Tr. Vol. 6, page 69)
Our review of the record convinces us that appellants failed to present sufficient evidence which would indicate that the cause of Marie Brown's death was in any way related to the injuries and trauma which she sustained at the premises of 1428 Marigny Street. We therefore affirm the trial courts granting of defendant's motion for a directed verdict on the wrongful death claim.
We find no error in the trial judge excluding the Charity Hospital bill from evidence, as same was irrelevant in view of the wrongful death claim having been dismissed.
For the reasons assigned this date, the judgment is affirmed in part, and reversed in part. There is judgment in favor of appellants against Emile A. Soupenne, for the full sum of $35,000.00, plus all costs of the trial court. Further there is judgment in favor of Emile A. Soupenne against J. W. Stroughter, and W. Stroughter and Associates Realty on the third party demand for all sums which Soupenne is liable. All parties are to share the costs of this appeal equally.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] The interrogatories propounded to the jury, and their responses were as follows:

"1. Did Emile A. Soupenne breach his legal duty owed to Mrs. Marie Brown, which was a cause of the accident? No.
2. Was J. W. Stroughter doing business as J. W. Stroughter & Associates Realty negligent to Mrs. Marie Brown which was a cause of the accident? Yes.
3. Did J. W. Stroughter doing business as J. W. Stroughter & Associates Realty breach his legal duty owed to Emile A. Soupenne, which was a cause of the accident? Yes.
4. Was Eddie Brown, Jr. negligent which was a cause of the accident? No.
5. Was Mrs. Marie Brown negligent which was a cause of the accident? No.
6. What amount of damages do you award for Mrs. Brown's injuries? $35,000.00."
[2] La. Civil Code Article 2322 provides:

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."