499 So.2d 1205 (1986)
Andrew GALLAGHER
v.
H. Mortimer FAVROT d/b/a Park Manor Apartments and/or Kingstowne Apartments, and Lake Development Management Company and ABC Insurance Company.
No. 86-CA-396.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Rehearing Denied January 16, 1987.
Writ Denied March 13, 1987.
*1206 Rudolph R. Schoemann, Schoemann & Associates, New Orleans, for plaintiff-appellant.
Owen A. Neff, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for defendants-appellees.
Before BOWES, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This appeal relates to a lessor's liability to his tenant for damages caused by a defect in the leased premises. The trial court judgment, in accord with the jury's findings, assessed damages at $10,000, the plaintiff (tenant) being awarded $2,000 because he was assigned 75 percent of the comparative fault. The plaintiff appeals. We affirm.
We are called upon to determine three issues:
(1) Whether the trial court erred in refusing to instruct the jury on the law of strict liability, and, if so, whether such error was harmless;
(2) Whether the jury's apportionment of liability was manifestly erroneous; and
(3) Whether the jury's award of $10,000 constituted an abuse of discretion.

FACTS
This case arises out of an accident which occurred while Mr. Andrew Gallagher, a tenant of an apartment at 6525 Park Manor Drive, was leaving his leased town house, through the front door on December 2, 1982 at approximately 9 a.m. At the time of the accident, the apartment complex was being renovated. On the morning of the accident, the construction company removed the ramp, step, or concrete sidewalk at the foot of the exterior front door of the *1207 Gallagher town house. While leaving the leased premises, Mr. Gallagher was conversing with his son, who was upstairs in the apartment. As Gallagher stepped out the front door, he fell, suffering injury and related damages and subsequently experiencing back problems.

ANALYSIS
In determining whether the trial court erred in instructing the jury to apply principles of the general duty owed by landowners under a theory of negligence rather than strict liability, we note our review is guided by La.C.C. art. 2695, which provides that:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Because the lessor guarantees the lessee against all vices and defects, not merely apparent defects, the lessor who fails to fulfill this duty is held strictly liable. That is, the plaintiff need not prove fault in the sense that the landlord knew or should have known of the vice. See Buxton v. Allstate Ins. Co., 434 So.2d 605, 607-08 (La.App. 3d Cir.1983). Instead, the claimant-tenant need only prove that a defect existed in the premisesthat is, a vice existed creating a dangerous condition that would reasonably be expected to cause injury to a prudent person employing ordinary care under the circumstancesand that this defect caused his damages.
As succinctly summarized by the Second Circuit in Wood v. Cambridge Mut. Fire Ins. Co., 486 So.2d 1129, 1132-33 (La.App. 2d Cir.1986),
LSA-C.C. Art. 2695 governs a lessor's liability to a tenant for damages caused by vices and defects of the thing leased and places upon the landlord the primary obligation to keep the premises in repair. Gele v. Markey, 379 So.2d 763 (La.App. 4th Cir.1979), writ granted, 380 So.2d 623 (La.1979), affirmed, 387 So.2d 1162 (La. 1980); and Buxton v. Allstate Ins. Co., 434 So.2d 605 (La.App. 3d Cir.1983). The article, which provides for strict liability of a landlord for damages resulting from hazardous conditions on the leased premises, is restricted to the landlord-tenant relationship and does not apply to third parties whose rights are protected by other code articles. Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3d Cir. 1981); Albritton v. J.C. Penney Co., Inc., 385 So.2d 549 (La.App. 3d Cir.1980), writ denied, 393 So.2d 727 (La.1980); and Reed v. Ramsay, 355 So.2d 618 (La.App. 4th Cir.1978).
In order for a lessee to recover damages from the lessor under this article due to an alleged vice, defect, or condition in the leased premises, the burden rests upon the lessee to prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages or losses. Latham v. Aetna Cas. & Sur. Co., 377 So.2d 350 (La.1979); Campbell v. Tidwell, supra; Albritton v. J.C. Penney Co., Inc., supra; and Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.1983), writ denied, 445 So.2d 449 (La.1984).
A defect has been previously defined under this article as one of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Buxton v. Allstate Ins. Co., supra; Campbell v. Tidwell, supra; Albritton v. J.C. Penney Co., Inc., supra; Krennerich v. WCG Investment Corporation, 278 So.2d 842 (La.App. 3d Cir.1973); and Renfro v. South Coast Corp., 374 So.2d 122 (La.App. 1st Cir.1979). Considering more recent jurisprudence in the area of strict liability and the introduction of comparative negligence into Louisiana tort law, the definition of defect under Article 2695 might be more appropriately *1208 expressed as meaning a condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous in normal use. This standard is consistent with the strict liability standards contained in Civil Code Articles 2317, 2318, 2319, 2320, 2321, and 2322. See Entrevia v. Hood, 427 So.2d 1146 (La.1983); Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Hunt v. City Stores, Inc., 387 So.2d 585 (La. 1980); and Loescher v. Parr, 324 So.2d 441 (La.1975).
LSA-C.C. Art. 2695 places liability on the status of lessor rather than upon personal fault. Thus, ignorance or latency of a defect is not a defense to liability under the article and it is not necessary to show negligence in order to recover. Liability of the landlord attaches whether or not he had actual knowledge of the defect. Buxton v. Allstate Ins. Co., supra; Smith v. Hartford Acc. & Indem. Co., 399 So.2d 1193 (La.App. 3d Cir.1981), writ denied, 406 So.2d 604 (La.1981); and Barnes v. Housing Authority of New Orleans, 423 So.2d 750 (La.App. 4th Cir. 1982). Fault of the tenant-victim is a defense to actions under LSA-C.C. Art. 2695 if it is shown that the tenant knew of the defective condition, the premises could be safely used with the use of reasonable care, and the tenant failed to exercise that standard of care. Renfro v. South Coast Corp., supra and Phillips v. Duplantis, 353 So.2d 335 (La.App. 1st Cir.1977), writ denied, 354 So.2d 1375 (La.1978)....
We accept the enunciated principles as constituting the clear and well-established law applicable to landlord-tenant liability. Because the trial court refused to instruct the jury as to these principles, the court clearly erred. However, since the jury found the lessor "at fault" under the more onerous negligence standard (connoting a defect plus knowledge),[1] the tenant is not adversely affected by this error. In viewing the jury interrogatories, it is evident that the trial court applied principles of comparative negligence. Only if the manner of delegating fault between the landlord and the tenant under strict lessor liability differs from this comparative approach is the plaintiff-tenant adversely affected. Thus, we must decide, for the first time in this Circuit, whether comparative fault applies in the strict lessor liability context.
The Second Circuit in Wood, supra at 1133, answered that comparative fault does apply, remarking, "The negligence or fault of the tenant-victim is not an absolute bar to recovery but requires the application of principles of comparative negligence. LSA-C.C. Art. 2323; and see Bell v. Jet Wheel Blast, Div. of Ervin Ind[us]., 462 So.2d 166 (La.1985)." See also Turner v. Safeco Ins. Co. of America, 472 So.2d 43, 48 (La.App. 1st Cir.1985). We agree with this conclusion because the jurisprudence had established that contributory negligence was available to defeat strict lessor liability. See Anslem v. Travelers Ins. Co., 192 So.2d 599, 600 (La.App. 3d Cir. 1966); Renfro v. South Coast Corp., 374 So.2d 122, 124 (La.App. 1st Cir.1979); but see Pollard v. Roberts, 306 So.2d 801, 805 (La.App. 2d Cir.1975). Contributory negligence being previously applicable to such a claim, comparative negligence is now made applicable by the language of La.C.C. art. 2323. Accordingly, we conclude that comparative apportionment of fault applies in an action premised on the strict liability of the lessor. Therefore, the plaintiff-tenant was not harmed by the erroneous failure of the court to instruct on strict liability.
We now turn to determine whether the percentage of fault allocated by the jury to the tenant-victim (75 percent) was manifestly erroneous. The Louisiana Supreme Court in Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 973-74 (La.1985) states:
*1209 We recognize that a standard for determining percentages of fault has not been provided by the Legislature, and we are therefore presented with an opportunity to offer guidelines as we apportion fault.... In so doing we have looked to the Uniform Comparative Fault Act, 2(b) and Comment (as revised in 1979), which incorporates direction for the trier of fact. Section 2(b) provides:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Additionally, we must be ever mindful that our standard of review regarding apportionment of fault is whether the trial court was clearly wrong; in other words, whether there was evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trier of fact's determination, which finding should not be disturbed on review unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La. 1973); Campbell v. Tidwell, supra.
In exercising our standard of review, recognizing our jurisprudential guidelines, certain record facts become relevant. Both the apartment manager and the construction supervisor testified that they often saw the plaintiff and he always smelled of alcohol. The jury apparently weighed the fact that the plaintiff failed to pay taxes for some years because of a dispute with the Internal Revenue Service and had other back injuries, once while in the Merchant Marines and once or twice as the result of a bus accident or accidents in which he was a passenger. On the other hand, beyond these areas of credibility exposure, one might also venture and take judicial notice that an individual does not ordinarily anticipate that his stoop or walkway will migrate in the night, never to return, and further venture that the ordinary behavioral characteristics of a reasonable man dictate that certain repeated series of actions become almost automatic, particularly leaving one's house or getting into one's car. Nevertheless, the plaintiff clearly proceeded inattentively out his door in the face of what must have been, under the plaintiff's own account, an appreciable racket earlier in the morning when his stoop was removed. Finally, we appreciate that renovation, as opposed to dilapidation, is to be encouraged and that some of the resulting problems must be tolerated. Mindful of these variables and after a careful review of the record in its entirety, considering the nature of the conduct of each party in light of the various factors suggested by the Louisiana Supreme Court, we cannot say the jury committed manifest error.
Finally, we must address the question of whether the jury's award of $10,000 was an abuse of discretion. We recognize we have a constitutional duty to review the law and facts and thereafter render a judgment on the quantum based on the merits, determining whether the trier of fact has abused the "much discretion" the law accords it in awarding damages. La. Const. art. V, § 10(B); La.C.C. art. 1934(3); Reck v. Stevens, 373 So.2d 498, 499-501 (La. 1979); Wilson v. Magee, 367 So.2d 314, 315 (La.1979). Only after an articulated analysis *1210 of the facts has disclosed an abuse of discretion may an appellate court disturb an award as being, for articulated reasons, either excessive or insufficient. Reck, supra.
A review of the medical history reflects the plaintiff was treated by both an orthopedist and a chiropractor. We appreciate that at least some of the chiropractic treatment was for prior accidents and that the chiropractor recognized some of the plaintiff's present back problems were from another accident, not from the accident in question. Finally, the chiropractor was quite indefinite as to how often in the future the plaintiff would have to be seen for treatment regarding this accident. Moreover, the orthopedic specialist testified that whether back surgery would be required in the future was uncertain and stated it was quite possible that disciplined use of a brace would be sufficient. With respect to other claimed recovery, the record shows the plaintiff claimed earnings of $20,000 per year; however, he offered no records, tax or otherwise, with which to prove his special damages.
After a careful review of the record, we do not find the lay and medical evidence clearly reveals an abuse of the jury's discretion. Therefore, absent an initial determination that the fact finder's very great discretion in the award of general as well as special damages has been abused, this court should not and will not disturb the trier's (here, the jury's) award.
For the reasons assigned, we affirm the judgment of the trial court. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.
 APPENDIX
FILED: December 12, 1985 Lester J. Fonseca
 DEPUTY CLERK
 JURY INTERROGATORIES
1. Were the defendants, H. Mortimer Favrot, Jr. d/b/a
 Breckenridge Apartments and Lake Development
 Management, Inc., at fault?
 √ yes _____ no
 If your answer is yes, go on to Question #2. If
 your answer is no, stop here, sign this form and
 return to the Courtroom.
2. Was H. Mortimer Favrot, Jr.'s d/b/a Breckenridge
 Apartments and Lake Development, Inc.'s fault a
 cause in fact of the plaintiff's injuries?
 √ yes _____ no
 If your answer is yes, go on to Question #3. If
 your answer is no, stop here, sign this form and
 return to the Courtroom.
3. Was the plaintiff, Andrew Gallagher, at fault?
 √ yes _____ no
 If your answer is yes, go on to Question #4. If
 your answer is no, skip questions 4, 6, and 7, and
 answer question #5.
4. Was the plaintiff's fault a cause in fact of his
 injuries?
 √ yes _____ no
 If your answer to #4, is yes, answer all remaining
 questions. If your answer to #4 is no, skip questions
 6 and 7 and answer question #5.
5. What damages do you find that the plaintiff sustained?
 $10,000.00. (including past and future medical expenses,
 if any, past and future physical
 and mental pain and suffering, if
 any, and loss of earnings, past and
 future, if any.) Go on to #6.
6. What percentage of negligence do you attribute to
 the defendants, H. Mortimer Favrot, Jr. d/b/a
 Breckenridge Apartments and Lake Development
 Management, Inc.?
 25 %* Go on to #7.
7. What percentage of negligence do you attribute to
 the plaintiff, Andrew Gallagher?
 75 %*
 * The percentages in questions 6 and 7 must TOTAL
 100%.
12/12/85 /s/ Paul Benitez 
 DATE FOREPERSON
NOTES
[1] The jury interrogatories, incorporating the jury responses thereto, are made a part of this opinion as an appendix.