601 So.2d 1 (1992)
Betty MARCANTEL, Plaintiff-Appellant,
v.
Willie KARAM, Defendant-Appellee.
No. 90-1394.
Court of Appeal of Louisiana, Third Circuit.
May 12, 1992.
*2 John G. Fontenot, Eunice, Errol Deshotels, Oberlin, for plaintiff-appellant.
Tynes, Fraser, Roach & Morris, Maurice L. Tynes, Lake Charles, for defendant-appellee.
Before GUIDRY, STOKER and CULPEPPER[*], JJ.
STOKER, Judge.
This is an appeal by plaintiff, Betty Marcantel, from a jury verdict finding defendant, Willie Karam, not liable for her personal injuries caused by a defect in a house owned by Karam. Betty and her husband Buford, leased the house from Karam. Betty, who is confined to a wheelchair, was being wheeled by Buford from the front porch of the house when Buford's leg fell through rotten boards on the porch. Upon falling, Buford lost his hold on Betty's wheelchair and the chair fell down the porch steps. Betty fell from the chair onto the concrete sidewalk and the chair fell on top of her.
Buford and his sister, Jerry Bushnell, who witnessed the accident, drove Betty to the hospital emergency room. Due to the length of the wait there, the nurse suggested they return Betty to the nursing home where she was staying at the time. X-rays taken the next day indicated a fracture in Betty's tailbone which was causing her a lot of pain, especially due to the fact that she was not ambulatory.
Betty filed suit against Karam for her personal injury alleging negligence and strict liability. Karam asserted the defenses that he had not been negligent, that Buford was solely at fault in causing the accident because he had failed to repair the porch himself, that Buford and Betty were at fault in pushing Betty's wheelchair over a porch they knew was partially rotten, and that Buford was at fault in letting go of the wheelchair when he fell through the porch floor. After a trial on the merits, the jury held that Karam was without "fault or negligence or liability ... that was a legal cause of the accident".
Betty appeals this judgment, contending the trial jury erred as a matter of law in failing to find Karam strictly liable for her injuries. We agree.

OPINION

KARAM'S FAULT
It is established that an owner-lessor is held to strict liability for personal injuries caused by his building's "ruin", whether such ruin is due to a vice in its construction or through his neglect to repair it. LSA-C.C. art. 2322. Our jurisprudence is clear that the liability imposed on the building owner under LSA-C.C. art. 660, art. 2322, art. 2693 and art. 2695 is a strict liability and neither ignorance of the building's condition nor an undetectable defect will absolve the owner from liability. Only the fault of a third person or the fault of the victim will absolve the owner from responsibility. The owner's responsibility is non-delegable. Hunt v. City Stores, 387 So.2d 585 (La.1980); Olsen v. Shell Oil, 365 So.2d 1285 (La.1978); Gaspard v. Pargas of Eunice, Inc., 527 So.2d 28 (La.App. 3d Cir.1988); Brown v. Soupenne, 416 So.2d 170 (La.App. 4th Cir.1982); Smith v. Hartford Accid. & Indem. Co., 399 So.2d 1193 (La.App. 3d Cir.), writ denied, 406 So.2d 604 (La.1981).
In order for the fault of a third person to exonerate an owner-lessor from his own obligation under strict liability, the third person's fault must be the sole cause of the damage. It must be of the nature of an irresistable and unforeseeable occurrence, and the resulting damage can have no causal relationship whatsoever to the fault of the owner-lessor in failing to keep his building in repair. Hunt, supra; Olsen, supra; Gaspard, supra; Smith, supra.
Also, the fault of the owner can be diminished, though not necessarily entirely absolved, by application of the principles of comparative negligence to the defenses of *3 victim fault or third-party fault in a strict liability suit. See Clement v. Armoniet, 527 So.2d 1004 (La.App. 5th Cir.1988); Womack v. Housing Auth. of New Orleans, 508 So.2d 936 (La.App. 4th Cir.1987); Gallagher v. Favrot, 499 So.2d 1205 (La. App. 5th Cir.1986), writ denied, 503 So.2d 23 (La.1987).
Not only is Karam liable as the building owner, but he is also liable as lessor of the building. Karam was responsible for repair of decay to the porch under LSA-C.C. arts. 2693, 2694 and 2717. We note that the trial judge failed to instruct the jury on this point of law. Moreover, Karam admitted that he knew the porch was rotting before the Marcantels rented the house, but did not repair it. This constituted a violation of his duty to deliver the house in good condition and free from any repairs, under LSA-C.C. art. 2693.
There is clearly a direct causal relationship between Karam's failure to keep his rental house in good repair and the injuries suffered by Betty. See Gaspard, supra; Smith, supra. Therefore, the trial jury clearly erred as a matter of law in finding Karam not liable for Betty's injuries.
Karam has asserted the defenses of victim fault and third-party fault, which we will now discuss.

BETTY MARCANTEL'S FAULT
Plaintiff was clearly not at fault in causing the accident. She lived in the house for six months prior to moving into the nursing home. She knew the porch boards were decaying at their edges while she lived there. Later, while she was residing at the nursing home and visited Buford at the house on weekends, she was not aware of the extent of the decay of the porch boards. Moreover, at the time of the accident, she was not in control of her wheelchair and was unable to leave it by herself. Therefore, the defense of victim fault is simply not supported by the facts of this case.

BUFORD MARCANTEL'S FAULT
Karam has also alleged third-party fault on the part of Buford Marcantel. Obviously, the jury found Buford at fault when it determined that Karam was not at fault. Buford admitted that he knew the porch was rotten on the ends of the boards, though he was unaware it was rotten further in toward the middle, where he fell through. Buford testified that he had brought the matter to Karam's attention several times, but that Karam had failed to repair it. LSA-C.C. art. 2694 states that upon Karam's failure to make the necessary repairs to the porch, Buford had the right to cause the repair to be made at Karam's expense. Although the obligation to make the repairs rested with Karam, the jury apparently found Buford at fault in failing to exercise his right to have the repairs made himself when Karam failed to do so. Under the standard of appellate review set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989), we affirm the jury's apparent finding of fault on the part of Buford. We find that Buford's negligence reduced Karam's liability by 25%. Therefore, we hold that Karam was 75% at fault for Betty's accident. See Mohr v. State Farm Ins. Co., 528 So.2d 144 (La.1988); Clement v. Armoniet, supra; Gallagher v. Favrot, supra.
We turn now to the issue of damages.

DAMAGES
Betty claims personal injury damages for the fracture of her tailbone and the accompanying pain and suffering.
Prior to the accident herein, Betty was suffering from numerous serious medical problems which confined her to a wheelchair. Her treating family practice physician, Dr. Allemand, testified that she had x-rays taken of Betty's tailbone after the accident, which revealed a fracture. Dr. Allemand recommended rest, use of a cushion for sitting and no weight bearing on the tailbone. Dr. Allemand found no problems with Betty's back. Dr. Allemand testified that although Betty's prior medical problems were also causing her pain, a fractured tailbone would cause additional pain, especially since Betty could only sit up or lay down and could not stand up. Dr. *4 Allemand stated that Betty actually used less pain medication after the accident than before it, but that it could be ascribed to the fact that Betty would not sit up as much after her accident. Finally, Dr. Allemand testified that a sacral ulcer (bedsore) which Betty developed above her tailbone was not related to the fracture of her tailbone.
Dr. Deshotel, a general practitioner, testified that he also examined Betty for her complaints of pain in her tailbone and back. The x-ray ordered by Dr. Deshotel revealed a fracture in Betty's tailbone. He prescribed pain medication and sleeping pills.
Dr. Foster, a neurosurgeon, testified that he examined Betty in May 1989, at Dr. Deshotel's request, for her tailbone and back pain. He noted, from her prior x-rays, a fracture in her tailbone. He also found multiple level degenerative disc problems due to arthritis, plus a bulging disc, all of which probably preexisted the fractured tailbone. However, he did not believe the disc problems were causing the pain in her tailbone. He further noted a large decubitus ulcer (bedsore) which extended from her sacral region down to her tailbone. In Dr. Foster's opinion, Betty's fall and the accompanying fracture of her tailbone probably aggravated her sacral ulcer. However, it probably did not aggravate her bulging disc and, if so, it did so only temporarily. Finally, Dr. Foster testified that he believed Betty undoubtedly was suffering pain from her fractured tailbone, even though she was also suffering pain from other causes. He stated that he found her to be a reliable and sincere individual. He could not recommend any type surgery to assist her since she was a very high risk patient, other than plastic surgery to close her sacral ulcer.
There was testimony by various witnesses as to Betty's pain and suffering. Betty herself testified that it was very painful to sit so she cannot sit for very long since the accident. She is more comfortable laying down. Buford testified that Betty was in pain, crying and moaning, immediately after the accident and that she has continued to complain of pain (from her tailbone) since then. Jerry Bushnell, Betty's sister-in-law, also testified that Betty was in pain immediately after the accident and that she still complains of pain in her tailbone when she sits up in her wheelchair. Tammy Guillory, Betty's daughter, testified that Betty cannot sit up as long as before and that she spends more time laying on her bed. Tammy stated that her mother has complained of pain in her tailbone since the accident. Finally, Sheila Austin, another of Betty's daughters, gave testimony essentially similar to Tammy's.
We find plaintiff's damages for her pain and suffering due to her fractured tailbone should be evaluated at $25,000. We do not find that plaintiff has shown a causal connection between her disc problems in her back and the accident. Since plaintiff's medical expenses have been paid by Medicaid, no special damages have been requested or proven and none are awarded.

CONCLUSION
For the reasons given above, we reverse the judgment of the trial court and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Betty Marcantel, and against defendant, Willie Karam, in the full sum of $18,750 (75% of $25,000) together with legal interest from date of judicial demand until paid. All costs of this litigation, both at the trial level and on the appeal, are assessed to defendant.
REVERSED and RENDERED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.