619 So.2d 836 (1993)
Francis A. & Betty J. DAIGLE
v.
Dale & Sandra LEGENDRE and State Farm Insurance Company.
No. 92 CA 0694.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
*838 Eugene A. Ledet, Jr., Alexandria, for plaintiffs and appellantsFrancis A. and Betty J. Daigle.
Christopher H. Riviere, Thibodaux, for defendants and appelleesDale and Sandra Legendre and State Farm.
Before CARTER, LeBLANC and PITCHER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit for damages resulting from a fall from a roof.

FACTS
On or about September 16, 1989, plaintiff, Francis Daigle, was assisting Dale and Chad Legendre in building a storage shed at the residence of Dale and Sandra Legendre (defendants) in Schriever, Louisiana.[1] The three men were on the roof of the shed laying the tar paper. Daigle was responsible for unrolling the paper and keeping it straight while the other two men nailed it down. Daigle was walking backward and unrolling the paper when he backed off of the roof and fell approximately fifteen (15) feet. As a result of the fall, Daigle sustained serious injuries to his wrist, back, and heel.
On April 25, 1990, plaintiff and his wife, Betty, filed the instant suit for damages against Dale and Sandra Legendre and their homeowner's liability insurer, State Farm Insurance Company, asserting claims in negligence and strict liability.[2] The petition alleged that Francis Daigle sustained serious injuries as a result of the fall and that his wife suffered damages for loss of consortium.
A jury trial began on July 10, 1991. The trial court rendered judgment on July 11, 1991, finding that Daigle was 90% at fault and that defendants were 10% at fault. Daigle was awarded damages in the amount of $16,859.35 (to be reduced by his percentage of fault), and Betty Daigle's loss of consortium claim was dismissed with prejudice.[3]
On July 25, 1991, plaintiffs filed a motion for judgment notwithstanding the verdict or, in the alternative, for an additur or a *839 new trial. Following a hearing on September 4, 1991, the trial judge determined that the evidence supported the jury's assessment of fault, but that the evidence did not support the award for pain and suffering. The trial judge then granted an additur in the sum of $72,500.00 (to be reduced by Daigle's percentage of fault).[4]
From this judgment, plaintiffs appealed, assigning the following specifications of error:
1. The jury and the trial court erred in finding plaintiff ninety percent (90%) comparatively negligent in the accident.
2. The trial court erred in failing to instruct the jury on strict liability.
3. The jury and the trial court erred in failing to find damages for loss of consortium for Mrs. Daigle.
Defendants answered the appeal, claiming that plaintiff was solely at fault and that the trial court erred in assessing 10% of the fault to the defendants.

JURY INSTRUCTIONS
Plaintiffs contend that the trial judge committed error by failing to instruct the jury on strict liability under LSA-C.C. art. 2317, which states the following:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
In a jury trial, the judge is not required to give the instructions submitted by either party; however, he is obligated to give instructions which properly reflect the law applicable in light of the pleadings and facts in each case. Manuel v. Louisiana Farm Bureau Casualty Insurance Company, 563 So.2d 916, 918 (La.App. 3rd Cir. 1990). Adequate instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Davidson v. Peden, 413 So.2d 568, 573 (La.App. 1st Cir.1982).
The judge has a duty to charge the jury as to the law applicable in a case and a correlative right and responsibility to require that the jury get only the correct law. Sparacello v. Andrews, 501 So.2d 269, 277 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (La.1987). It is the judge's responsibility to reduce the possibility of confusing the jury, and he may exercise the right to decide what law is applicable. Sparacello v. Andrews, 501 So.2d at 277.
An appellate court must exercise great restraint before overturning a jury verdict on a suggestion that jury instructions were so erroneous as to be prejudicial. Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La.App. 3rd Cir.1991); Creel v. S.A. Tarver & Son Tractor Co., Inc., 537 So.2d 752, 754 (La.App. 1st Cir. 1988). We must therefore inquire as to whether strict liability could be applicable in light of the pleadings and facts in this case.
The theory of strict liability applies only if the plaintiff has shown the following: (1) the thing which caused the damage was in the care, custody, and control of the defendant; (2) that the thing had a vice or defect which created an unreasonable risk of harm; and (3) that the injury was caused by the defect. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990).
There is no dispute that defendants had custody of the shed and its unfinished roof. The issues are whether the unfinished roof (1) created an unreasonably dangerous defect and (2) caused plaintiff's injuries. Plaintiff alleged in his petition that the accident was caused solely by the negligence, strict liability, and/or fault of the defendants. Although plaintiff made no *840 specific allegations of any vices or defects in the roof of the defendants' shed, plaintiff presented evidence at trial which suggested that the defendants' failure to provide some sort of perimeter protection might have rendered the unfinished roof unreasonably dangerous. If the condition of the worksite could have been a cause of plaintiff's accident, it was error for the trial court to fail to charge the jury on strict liability. Stovall v. Shell Oil Company, 577 So.2d 732, 741 (La.App. 1st Cir.), writ denied, 582 So.2d 1309 (La.1991).
In view of the facts involved in the instant case, we find that the trial court erred in refusing to give the jury instruction on the defendants' strict liability. There is evidence that the unfinished roof, without perimeter protection, could have presented an unreasonable risk of harm and could have been a cause of plaintiff's accident.
However, we do not find such error to be reversible. While the basis for determining the existence of a duty is different in strict liability and ordinary negligence cases, the duty is the same. Manasco v. Poplus, 530 So.2d 548, 549 (La.1988); Williams v. Orleans Parish School Board, 541 So.2d 228, 230 (La.App. 4th Cir.1989). In a strict liability case as opposed to a typical negligence case, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. Sistler v. Liberty Mutual Insurance Company, 558 So.2d at 1112, n. 7; Tipton v. Bossier Parish School Board, 441 So.2d 453, 454 (La.App. 2nd Cir.1983).
In the instant case, the jury heard all of the evidence and found the defendants "at fault" under the more onerous negligence standard (connoting a defect plus knowledge). See Gallagher v. Favrot, 499 So.2d 1205, 1208 (La.App. 5th Cir.1986), writ denied, 503 So.2d 23 (La.1987). In reviewing the jury interrogatories, it is evident that the trial court applied principles of comparative negligence. Only if the manner of delegating fault under strict liability differs from the comparative approach used by the trial court is the plaintiff adversely affected by the failure to instruct the jury on strict liability. See Gallagher v. Favrot, 499 So.2d at 1208. A review of recent jurisprudence shows that comparative fault is being applied in settings of sidewalk and yard defects, highway defects, and other strict liability cases. The courts are applying the comparative fault principles to strict liability cases on a case by case basis and as the facts and circumstances lead the courts to do so. Landry v. State, 495 So.2d 1284, 1290 (La. 1986); See also Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1267 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985). In many cases, the courts follow the reasoning of Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166, 171 (La. 1985), and inquire whether reducing the negligent plaintiff's recovery would serve as an incentive for similarly situated plaintiffs to exercise care, while not reducing the incentive of the owner of the thing from removing a risk of harm.
This is such a case. The application of comparative fault will reduce plaintiff's recovery and thereby give similarly situated plaintiffs a motivation for exercising reasonable care under similar circumstances. However, a reduction of plaintiff's recovery will not diminish the defendant-owner's incentive to remove unreasonable risks from his property. Accordingly, we conclude that the trial court correctly applied comparative apportionment of fault in the instant case. Therefore, plaintiff was not harmed by the failure of the trial judge to instruct the jury on strict liability.

COMPARATIVE NEGLIGENCE
It is well settled that the allocation of comparative negligence is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Scamardo v. New Orleans Stevedoring Company, 595 So.2d 1242, 1248 (La.App. 4th Cir.1992). When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review *841 the appellate court should not disturb this factual finding in the absence of manifest error. Gray v. Louisiana Downs, 585 So.2d 1238, 1242 (La.App. 2nd Cir.1991); Hammer v. Combre, 503 So.2d 624, 625 (La.App. 4th Cir.1987).
The Louisiana Supreme Court, in Watson v. State Farm Fire and Casualty and Insurance Co., 469 So.2d 967, 974 (La. 1985), set forth guidelines for apportioning fault under the doctrine of comparative negligence. The court stated the following:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, the court listed various factors which may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty and Insurance Co., 469 So.2d at 974.
Plaintiffs contend that Bernard v. Casualty Reciprocal Exchange, 534 So.2d 1348 (La.App. 5th Cir.1988), writ denied, 536 So.2d 1241 (La.1989), is similar to the instant case and supports the proposition that the maximum allowable fault with which plaintiff could be charged is 25%. In Bernard, the plaintiff was assisting defendant in the construction of a front end alignment pit. While trying to maneuver a 100-pound board, plaintiff fell through a gap on one level of the pit. Plaintiff admitted that he was aware of the gap in the pit, but that he momentarily forgot such fact. The appellate court found that plaintiff could be no more than 25% at fault and that defendant was 75% at fault.
However, unlike the situation in Bernard, the danger presented by the edge of the roof in the instant case was much more obvious to plaintiff. While one might momentarily forget that the floor on which he is walking contains an unmarked or unexpected step or hole, one is much less likely to forget the danger presented by a roof's edge.
Moreover, plaintiff had no prior experience in building projects; he volunteered to help defendants in the construction of the shed. Despite being aware of the dangers of working at such heights, plaintiff did not request any type of safety apparel. Plaintiff testified that, while on the roof, he periodically looked back to see where he was in relation to the edge of the roof, but that he did not realize he was so close to the edge. In considering possible mitigating factors, plaintiff's lack of caution was not dictated by any emergency or any other circumstance which would require him to proceed in haste. Also, although he was not an experienced builder, his capacity was not inferior to that of the defendants.
The defendants' fault arises primarily from the lack of perimeter or roof edge protection. Denis Howard, an expert in the field of safety, testified that some type of perimeter protection (scaffolding, etc.) or visual aid (such as a chalk line drawn a sufficient distance from the roof's edge) would have been necessary in order for plaintiff to notice the edge of the roof while he was walking backward, rolling out the tar paper.
However, even plaintiff admitted that, outside of commercial construction, he has never seen any type of perimeter protection being used in the construction of a roof. Moreover, plaintiff acknowledged that, if scaffolding had been placed along the side of the roof, his injuries would have been much more serious.
An additional factor in the jury's assessment of defendants' fault was the lack of warning from Dale and Chad Legendre that plaintiff was approaching the edge of the roof. However, both Dale and Chad Legendre testified that their heads were bent, nailing down the tar paper at the *842 time, and that they did not notice that plaintiff was nearing the edge of the roof.
In the instant case, the jury apportioned 90% of the fault to plaintiff and 10% to the defendants. After a careful review of the record and a consideration of the Watson factors, we do not find that the evidence reveals manifest error in the jury's apportionment of fault.

LOSS OF CONSORTIUM
Loss of consortium includes such pecuniary elements as loss of services and such non-pecuniary components as love, companionship, affection, society, sexual relations, comfort, and solace. Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 158 (La.App. 3rd Cir.), writ denied, 565 So.2d 450 (La.1990).
In the instant case, the jury found that Betty Daigle was not entitled to an award for loss of consortium. Under Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1977), if the appellate court finds that the trial court abused its discretion in the amount of damages awarded, the court is limited in raising awards only to the lowest point which is reasonably within the discretion of the trial court.
After a careful consideration of the uncontested testimony of Betty Daigle, we conclude that the trial court's failure to award loss of consortium damages was an abuse of discretion. Betty Daigle testified that her husband was hospitalized for a week after the accident and that she stayed with him the entire time because he could do nothing for himself. After he was released from the hospital, he was bedridden for six weeks and in a wheelchair for three months thereafter. During that period of time, there were no sexual relations between Betty Daigle and her husband. Betty Daigle was required to perform all personal hygiene tasks for her husband, and she performed all of the household chores normally performed by her husband. Betty Daigle testified that they could not go places together and that they could not care for their grandchildren during the period following the accident. Betty Daigle indicated that because of the intense pain, her husband became very irritable, emotional, and depressed after the accident. She stated that her husband's changed behavior caused strain and stress in her life.
A review of the jurisprudence and the record in the instant case leads us to conclude that the lowest award appropriate under the circumstances is $5,000.00. We therefore amend the judgment of the trial court to award Betty Daigle $5,000.00 for loss of consortium. See Thomas v. Hartford Insurance Company, 540 So.2d 1068, 1075 (La.App. 1st Cir.), writ denied, 542 So.2d 516 (La.1989); Jinks v. Wright, 520 So.2d 792, 795 (La.App. 3rd Cir.1987); Finley v. Bass, 478 So.2d 608, 614 (La.App. 2nd Cir.1985). Of course, this amount is also subject to reduction by the percentage of negligence attributable to Francis Daigle. See Gray v. Louisiana Downs, 585 So.2d at 1245.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is amended to include an award for loss of consortium to Betty Daigle. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are to be shared equally by the plaintiffs and the defendants.
AFFIRMED, AS AMENDED.
NOTES
[1] Chad Legendre is the brother of Dale Legendre and the son-in-law of Francis Daigle.
[2] The suit was filed in the 19th Judicial District Court, Parish of East Baton Rouge, but was transferred to the 32nd Judicial District Court, Parish of Terrebonne.
[3] Plaintiffs' damages were itemized as follows:

a. Past and present medical $10,859.35
b. Future medical 1,000.00
c. Past and present mental and
 physical pain and suffering 5,000.00
d. Future mental and physical pain
 and suffering -0-
e. Permanent disability -0-
f. Loss of consortium -0-
 ----------
 TOTAL $16,859.35

[4] The trial court affirmed the other damage awards. The award for pain and suffering was itemized as follows:

a. Right wrist $10,000.00
b. Compression fracture to the back 7,500.00
c. Heel fracture 55,000.00
 ----------
 TOTAL $72,500.00