|1SAUNDERS, Judge.
Plaintiffs were injured when their vessel struck a submerged well casing several hundred feet offshore. The well had been situated several hundred feet inland forty (40) years earlier, when it had been plugged and abandoned by Forest Oil Corporation, but was lost to the sea around 1974 due to ensuing wetlands loss.
The question presented on appeal is whether either the oil company lessee or the heirs of the original passive property owner may be held answerable for plaintiffs’ injuries. Following summary judgments in favor of both the oil producer and the heirs, plaintiffs appeal. We reverse the summary judgment granted in favor of the 12energy producing lessee, affirm the judgment in favor of the landowners, and dismiss the action against the State for failure to state a cause of action.

FACTS

The facts are largely uncontested.
This lawsuit arises out of an accident which occurred October 28, 1990, when a shrimping boat operated by Jake Adam Billiot struck the submerged casing of a formerly land-based well plugged and abandoned by Forest Oil Corporation in 1957. Both Billiot and James Soudelier, a passenger or member of Billiot’s vessel, were injured. The well was located in Cameron Parish on land formerly belonging to the Estate of Martin 0. Miller. Shortly before or after 1974, the land surrounding the casing in question eroded into the Gulf of Mexico.
Named as defendants in plaintiffs’ suit for damages are the State of Louisiana, the land owners, and the producer-lessee, Forest Oil Corporation.
The suit against Forest Oil Corporation claims that the company is responsible for the accident and injuries because the company failed to properly plug and abandon the well casing at a safe distance above or below the ground surface, failed to inspect wells it should have known to be vulnerable to the Gulfs eroding forces, failed to advise the State that its well casing had become a danger to marine traffic, and failed to mark the well casing to make it visible to marine traffic.
Plaintiffs alternatively allege that Forest Oil Corporation should be held liable as custodian and/or owner of an unreasonably dangerous casing.
Essentially the same claims in negligence and strict liability are made against the heirs of Martin Miller and the State, which is also alleged to have failed to have the submerged well casing placed on navigational charts.
For purposes of clarity, the appeals with respect to each defendant’s liability will be treated separately.

\.FOREST OIL

Forest Oil filed a motion for summary judgment contending that the plaintiffs’ actions against it are barred pursuant to the ten (10) year peremptive period set forth in La.R.S. 9:2772 and, alternatively, that it owed no duty to plaintiffs. Following oral argument, the trial court found the ten (10) year peremptive statute applicable to Forest and granted its summary judgment. This appeal followed.
La.R.S. 9:2772 provides as follows:
Sec. 2772. Peremptive period for actions involving deficiencies in surveying, design, *755 supervision, or construction of immovables or improvements thereon
A. No action, whether ex contractu, ex delicto, or otherwise, including, but not limited to, an action for failure to warn, to recover on a contract or to recover damages shall be brought against any person performing or furnishing land surveying services, as such term is defined in the first paragraph of R.S. 37:682(9), including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property:
(1) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner; or
(2) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than ten years after the improvement has been thus occupied by the owner ...
[[Image here]]
B. The causes which are perempted within the time described above include any action:
[[Image here]]
(2) For damage to property, movable or immovable, arising out of any such deficiency;
(3) For injury to the person or for wrongful death arising out of any such deficiency; and
(4) Any action brought against a person for the action or failure to act of his employees.
|4(5) Deficiency, as used in this Section, includes failure to warn the owner of any dangerous or hazardous condition, regardless of when knowledge of the danger or hazard is obtained or should have been obtained.
This peremptive period shall extend to every demand whether brought by direct action or for contribution or indemnity or by third party practice, and whether brought by the owner or by any other person.
[[Image here]]
D. Actions for the causes enumerated in Sub-section B of this Section, against the persons enumerated in Sub-section A of this Section, shall prescribe by the applicable prescriptive periods established by law for such actions.
[[Image here]]
Additionally, La.Civ.Code art. 463 states: Art. 463. Component parts of tracts of land
Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungath-ered fruits of trees, are component parts of a tract of land when they belong to the owner of the ground. (Emphasis added.)
One of the arguments made before the trial court was that the casing, because it did not belong to the owner of the land, does not constitute immovable property. Because Forest does not own the land, it is maintained that the casing did not constitute an immovable; thus, La.R.S. 9:2772 is inapplicable. As indicated by the language in La.R.S. 9:2772, in order to fall within the peremptive provision, the casing must constitute an improvement to immovable property for the peremptive provisions to be enforced. Forest Oil’s response is that the law then in force was that buildings and other constructions permanently attached to the ground constituted component parts of a tract of land, regardless of whether they belonged to the owner of the ground.
On this limited point, Forest Oil is correct. In Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978), it was made clear that the term “building” as used in the Civil Code is broad enough to include oil wells. Additionally, the 1870 Civil Code classified as ^immovables by nature buildings and other constructions without requiring unity of ownership as a prerequisite to immovability. P.H.A.C. Services v. Seaways Intern., 403 So.2d 1199, 1203 (La.1981) and cases cited therein; Dugas v. Cacioppo, 583 So.2d 26 (La.App. 5 Cir.1991). Consequently, the casing in this case does constitute immovable property.
*756 Nonetheless, the fact that the casing constitutes immovable property is not dispos-itive. This is because La.R.S. 9:2772 affords peremptory relief to professional contractors who improve immovable property belonging to third, parties. Dugas, supra. Thus, while the provision might have served to protect a bona fide third party contractor employed by Forest Oil, Bruyninckx v. Bratten, 554 So.2d 247 (La.App. 3 Cir.1989), it does not apply to Forest Oil, owner of the casing. Indeed, La.R.S. 9:2772(F) expressly provides to the contrary:
F. Nothing in this Section shall be construed as modifying the liability or responsibility otherwise imposed by law on the oimer of an immovable or the possessor, lessor or lessee of an immovable, by reason of the design, planning, supervision, inspection or observation of construction, or construction of improvements to immovable property.
During the term of Forest Oil’s lease, the casing was the oil company’s separate immovable.[1] For this reason, the trial court erred as a matter of law in relying on La. R.S. 9:2772.
| gRather, the trial court should have looked elsewhere to determine whether Forest Oil could be held responsible for its casing.
Strict liability for things in one’s custody is found in LSA-C.C. Art. 2317:
We are responsible not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or the things which we have in our custody. This, however, is to be understood with the following modifications.
One of these modifications is found in LSA-C.C. Art. 2322:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
In order to impose liability under Art. 2322 on the owner of the building, there must be: (1) a building; (2) defendant must be the owner; and (3) there must be a “ruin” caused by a vice in construction or neglect to repair. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978).
Liability under LSA-C.C. Art. 2315 imposes the same requirements as Art. 2317, the difference in the two articles being, under the theory of negligence, plaintiff must show that the owner knew or should have known of the risk, whereas under strict liability, the plaintiff is relieved of proving defendant’s scienter. Eldridge v. Bonanza Family Restaurants, 542 So.2d 1146 (La.App. 3 Cir.1989). Under either theory of liability, the plaintiff has the burden of proving: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and, (3) the defect in the property was a cause-in-fact of the resulting injury. Id. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Id.
Celestine v. Union Oil Co. of California, 93-1330 (La.App. 3 Cir. 5/4/94), 636 So.2d 1138, 1141, writ granted, 94-1868 (La. 11/11/94), 644 So.2d 660.[2] Additionally, La.Civ.Code art. 660 provides as follows:
*757 Art. 660. Keeping buildings in repair
|7The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passerby. He is answerable for damages caused by his neglect to do so.
In Olsen, at 1289-90, a fixed drilling platform having its foundation in the soil was found to be a “building” for purposes of La.Civ.Code art. 2322 without regard to whether it was intended for habitation.
Without making specific reference to oil derricks, this court has made several observations as to what constitutes a building under the article. An inherent requirement is that there be a structure of some permanence. Mudd v. Travelers Indemnity Co., 309 So.2d 297 (La.1975). Also, the permanent structure need not be intended for habitation, for it to be considered a “building.” Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (1970). Additionally, we have held, for instance, that, for purposes of delictual responsibility under Article 2322, the word “building” encompasses a wharf or walkway over water which gave access and was attached to a camphouse. Cristadoro v. Von Behren’s Heirs, 119 La. 1025, 44 So. 852 (1907). See also Howe v. City of New Orleans, 12 La.Ann. 481 (1857).
The wording “building” in Article 2322 is translated from the word “batiment” in its corresponding article of the French Civil Code, Article 1386. “Batiment” is defined in Bescherelle’s Dictionnaire National (1844) as “a generic term designating all edifices public or private, regardless of the type material composing them, but most particularly those which serve as habitations.” (The writer’s translation.) Traditionally, French jurisprudence has interpreted the word “batiment” broadly; according to an authoritative French treatise, numerous French authors consider it to include all works of man, synonymous with the word “construction” (including structures both movable and immovable, whether temporary or permanent). The treatise would more narrowly define the word, at least limiting it to immovables, and the tendency of modern French jurisprudence has been so to interpret the word more narrowly.
Louisiana Civil Code Article 464 (1870) provides that “buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature.” See also Civil Code Articles 463 and 464, as re-enacted in 1978. In the context of the Louisiana Civil Code, a “building” is a type of permanent construction that would be classified as an immovable.
Without further defining the limits of a “building” within the meaning of Article 2322, it is sufficient for present purposes to hold that a permanent structure, such as the fixed drilling platform owned by Shell and which has a foundation in the soil, is indeed a building for purposes Isof that article, whether or not intended for habitation. (Footnotes omitted.)
For the reasons articulated in Olsen, we likewise construe the word “building” to encompass the abandoned well easing here.
Thus having concluded that the abandoned well casing constitutes a “building,” it is only logical that Forest Oil be held responsible for the vices in the casing. La.Civ.Code arts. 660, 2317 and 2322, supra. As we noted in Marcantel v. Karam, 601 So.2d 1 (La.App. 3 Cir.1992):
It is established that an owner-lessor is held to strict liability for personal injuries caused by his building’s “ruin”, whether such ruin is due to a vice in its construction or through his neglect to repair it. LSA-C.C. art. 2322. Our jurisprudence is clear that the liability imposed on the building owner under LSA-C.C. art. 660, art. 2322, art. 2693 and art. 2695 is a strict liability and neither ignorance of the building’s condition nor an undetectable defect will absolve the owner from liability. Only the fault of a third person or the fault of the victim will absolve the owner from responsibility. The owner’s responsibility is non-delegable. Hunt v. City Stores, 387 So.2d 585 (La.1980); Olsen v. Shell Oil, 365 So.2d 1285 (La.1978); Gaspard v. Pargas of Eunice, Inc., 527 So.2d 28 (La.App. 3d Cir.1988); Brown v. Soupenne, 416 So.2d 170 (La.App. 4th Cir.1982); Smith v. *758 Hartford Accid. & Indem. Co., 399 So.2d 1193 (La.App. 3d Cir.), writ denied, 406 So.2d 604 (La.1981).
In order for the fault of a third person to exonerate an owner-lessor from his own obligation under strict liability, the third person’s fault must be the sole cause of the damage. It must be of the nature of an irresistible and unforeseeable occurrence, and the resulting damage can have no causal relationship whatsoever to the fault of the owner-lessor in failing to keep his building in repair. Hunt, supra; Olsen, supra; Gaspard, supra; Smith, supra.
Also, the fault of the owner can be diminished, though not necessarily entirely absolved, by application of the principles of comparative negligence to the defenses of victim fault or third-party fault in a strict liability suit. See Clement v. Armoniet, 527 So.2d 1004 (La.App. 5th Cir.1988); Womack v. Housing Auth. of New Orleans, 508 So.2d 936 (La.App. 4th Cir.1987); Gallagher v. Favrot, 499 So.2d 1205 (La.App. 5th Cir.1986), writ denied, 503 So.2d 23 (La.1987).
Marcantel, at 2-3.
| gFinally, we address Forest Oil’s assertion that language purporting to release Forest of liability contained in the contract terminating its lease with the original lessor, in the present context shifts its liability to the heirs. Forest Oil cannot be absolved of its responsibility as to plaintiffs, whatever the consequences, if any, of its contracts purporting to release it from any obligations that it entered in 1957 and 1971 with the landowner.
In our view, this ax*gument overlooks the basis for the delictual obligation of the owner of a building for damages caused by defects in its structure or appui’tenances:
“The obligation of every property owner to answer for damages for a failure to keep his property in such condition of repair that it will not be dangerous to other persons is imposed by law, by Articles 670, 2315, 2322 of the Civil Code.” Klein v. Young, 163 La. 59, 69, 111 So. 495 (1927). In Klein, [the Louisiana Supreme Court] held that, although the owner of the premises could by contract “allow another person to use the property for any particular purpose” and could thus regulate the rights As between owner and contractual occupant, the owner could not by such contract evade his obligation imposed by law to repair harm to others resulting from defects in his premises.
Olsen, at 1291.
In light of the foregoing, the summary judgment granted in favor of Forest Oil Company is reversed.

ORIGINAL PROPERTY OWNERS’ LIABILITY

The trial court also granted summary judgment in favor of the heirs of the Estate of Martin Miller. Although the judgment leaves some question as to its grounds (La. R.S. 9:3221 or general tort theory), ultimately we believe its conclusion was correct under the circumstances.
As we have already observed, the well casing remained the separate immovable property of Forest Oil during the term of its lease. It is not dispositive that Forest Oil owned only the casing and merely leased the surrounding terra.
holn the case of Loescher v. Parr, 324 So.2d 441, 449, n. 7 (La.1975), Justice Tate quoted with approval the following language on the question of what constitutes “custody” for purposes of liability:
“[T]he things in one’s care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others.”
Jacobs v. Spinnakers, 474 So.2d 1019, 1022 (La.App. 5 Cir.), writ denied, 478 So.2d 149 (La.1985).
In this case, garde rested with Forest Oil as owner of its separate immovable, the casing, and as lessee of the immediately adjacent area during the term of the lease and beyond. This is because the fault in the casing and immediately surrounding earth can best be characterized as inherent in the *759 things over which Forest Oil had dominion. Guillory v. Foster, 93-996 (La.App. 3 Cir. 3/2/94), 634 So.2d 1372, 1375-76.

STATE OF LOUISIANA

As has already been noted, the State of Louisiana is also a named defendant in these proceedings. Plaintiffs sued the State under the theory of strict liability and, alternatively, for failing to post markers or buoys to warn of the casing’s submarine presence.
We hold that, as a matter of public policy, the State of Louisiana cannot be charged with responsibility in this case for perils in the wetlands areas lying presently or formerly adjacent to the Gulf of Mexico, as they were fostered and propagated solely by the actions or inactions of a third party.
It is well recognized that the application of strict liability must follow a weighing of moral, social and economic values and the ideal of justice. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Landry v. State, 495 So.2d 1284 (La.1986). In the often quoted case, Entrevia, our Supreme Court stated at 1149:
|n“... Since Articles 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it [the imposition of strict liability] becomes the interpreter’s duty to decide ivhich risks are encompassed by the codal obligation from the standpoint of justice and social utility. Geny, Method of Interpretation and Sources of Private Positive Law Sec. 174 (Louisiana State Law Institute trans. 2d ed. 1963).” (Emphasis added.)
Celestine, at 1142-43.
It is the party to whom society allots garde that is answerable. This fault is based upon that party’s failure to prevent the unreasonable risk of injury to others. As the supreme court stated in Loescher:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former’s part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
The Fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
This jurisprudence recognizes that the injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.
Id., at 446-447.
The State filed a general denial. It filed no peremptory exception. Under the circumstances, this does not matter. The failure of a party to disclose a cause of action |i2or a right or interest in bringing the suit may be noticed by the appellate court on its own motion. La.Code Civ.P. art. 927.

CONCLUSION

In choosing against whom to hold responsible among innocent victims, passive landowners of isolated property (the State, the lessor, and his successors), and an active agent whose separately owned property was rendered defective by its actions or inactions, the decision is simple. Owners of isolated, unproductive, rural property having little current worth or utility typically are in a *760 poor position to absorb the costs of premises risks and to redistribute them among the community. Entrevia, 427 So.2d at 1150. It likewise would be wholly unworkable to require or expect the State to run a fine toothed comb through hundreds of miles of coastal waters in search of dangers, particularly those that are not apparent, are imposed by the conduct of third parties, and over which the State has no control. Cf., Landry, 495 So.2d at 1288 (shorter coastlines; no intervening causes). See also Olsen, at 1293, n. 15 and accompanying text. In this case, it is the owner of a building or its component parts, in this case Forest Oil as owner of the well casing, who has a non-delegable duty to keep its building and its appurtenances in repair so as to avoid the unreasonable risk of injury to others. Entrevia, at 1148, citing Olsen.

DECREE

For the foregoing reasons, the summary judgments granted in favor of the landowners and their insurer are affirmed; the suit against the State is dismissed; and the summary judgment in favor of Forest Oil Corporation is reversed.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. La.Civ.Codc art. 464 provides that buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground:
Art. 464. Buildings and standing timber as separate immovables
Buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground.
Although the definition of component parts of immovable property has changed, the definition of separately owned immovable property, La.Civ. Code art. 464, enacted by Acts 1978, No. 728, § 1, has not.

. In Celestine, the supreme court apparently granted writs on the narrow question of whether an owner can be liable in strict liability to a repairman for injuries caused directly from the defect, vice or ruin being repaired. This question is not before us. In any event, we choose to borrow from Celestine certain carefully selected portions which we believe accurately report the law in the broader context.